## NEW JERSEY v. YARD.

1. A statute of a State, which declares that all charters of corporations granted after its passage may be altered, amended, or repealed by the legislature, does not necessarily apply to supplements to an existing charter which were enacted subsequently to the statute.

2. Nor does a provision, which declares that "this supplement, and the charter to which it is a supplement, may be altered or amended by the legislature," apply to a contract with the corporation made in a supplement thereafter passed.

3. Such statutory reservations of the right to repeal, unlike similar constitutional provisions, are only binding on a succeeding legislature so far as it chooses to conform to them; and, if it so intends, an irrepealable legislative contract may be made. It is, therefore, in every case a question whether the legislature making the contract intended that the former provision for repeal or amendment should, by implication, become a part of the new contract.

4. In this case, the contract of 1865 for a specific rate of taxation is inconsistent with any such implication, because: 1. There was a subject of dispute and a fair adjustment of it for a valuable consideration on both sides. 2. The contract assumed, by legislative requirement, the shape of a formal written contract. 3. The terms of the contract, that "this tax shall be in lieu and satisfaction of all other taxation or imposition whatsoever by or under the authority of this State, or any law thereof," exclude, in view of the whole transaction, the right of the State to revoke it at pleasure.

ERROR to the Court of Errors and Appeals in and for the State of New Jersey.

The Morris and Essex Railroad Company was, by an act of the legislature of New Jersey, passed Jan. 29, 1835, created a corporation.

The fifteenth section of the charter enacted, that, as soon as the net proceeds of said railroad amounted to seven per cent on its costs, the corporation should pay to the treasurer of the State a tax of one-half of one per cent on the cost of said road, to be paid annually thereafter on the first Monday of January of each year; provided, that no other tax or impost should be levied or assessed upon the corporation.

The twentieth section reserved to the legislature the right to alter, amend, or repeal the act, whenever it should think proper.

A supplement to the charter, passed March 2, 1836, gave power to build a branch and lateral roads, and repealed the twentieth section of the original charter; but reserved the right

of the legislature to alter or amend the supplement, or the act to which it is a supplement, whenever the public good may require it.

On the 14th of February, 1846, a general act relating to corporations was approved, which enacted that the charter of every corporation which should thereafter be granted by the legislature should be subject to alteration, suspension, and repeal, in the discretion of the legislature.

On March 28, 1862, a general tax act was approved, the eighth section of which enacts that all private corporations of the State, except those which, by virtue of any irrepealable contract in their charters or other contracts with the State, are expressly exempted from taxation, should be and were thereby required to be respectively assessed and taxed at the full amount of their capital stock paid in, and accumulated surplus.

Sect. 13 enacts that the real estate of private corporations situate within the State shall be assessed against said corporation in the township or ward in which it is located, in the same manner as the real estate of individuals; and the amount of such assessment shall be deducted from the amount of the capital stock, &c.

The twenty-first section repeals all acts and parts of acts, whether special or local, or otherwise, inconsistent with the provisions of the act.

Another supplement was approved on the 23d of March, 1865. It authorizes a branch road through Boonton and to Paterson; and for that purpose empowers the company to exercise all the powers and franchises given by the original act and supplements, subject, however, to all the restrictions, limitations, and conditions of said original act and supplements which may be applicable to the powers and franchises conferred by this supplement.

The third section enacts that the tax of one-half of one per cent, provided by the said original act of incorporation to be paid by said company to the State whenever the net earnings of the company amounted to seven per cent upon the cost of the road, shall be paid at the expiration of one year from the time when the road of the company shall be open and in use

to Phillipsburgh, and annually thereafter; which tax shall be in lieu and satisfaction of all other taxation or imposition whatsoever by or under the authority of the State, or any law thereof: provided, that the section shall not go into effect or be binding upon the company until it, by an instrument duly executed under its corporate seal and filed in the office of the secretary of State, shall have signified its assent hereto, which assent shall be signified within sixty days after the passage of the act, or the act shall be void.

The fifth section enacts that the act shall take effect immediately.

In due time, the company filed a paper under its seal, bearing date April 24, 1865, reciting said third section, and setting forth that the company had received a copy of the act, and had considered it. It then declares that, in consideration of the terms and conditions of the said supplement, and more especially of the third section thereof, the company has assented, and does thereby assent, to the said act; and has agreed, and does thereby agree, to be subject to the provisions of the said act, and to pay the tax therein named, as therein specified.

On the 5th of March, 1867, another supplement to the charter was approved, which, after reciting that the company had lately extended its railroad from Hackettstown to Phillipsburgh, gives power to increase its stock and straighten its road, and declares that the company for this purpose shall be invested with all the powers conferred by the charter and supplements, subject to the duties and liabilities thereby imposed. It enacts that no tax by or under the authority of the State shall be imposed upon any property purchased, held, or used by said company for the purposes of its charter, or any of the supplements thereto; except the tax of one-half of one per cent on the cost of its road, which, by the said charter and the supplement thereto approved on the twenty-third day of March, 1865, was required to be paid by said company in lieu of all other taxes, any act to the contrary notwithstanding.

No formal acceptance of this act was provided for or given.

On the 2d of April, 1873, an act, entitled "An Act to establish just rules for the taxation of railroad corporations, and to

rnduce their acceptance and uniform adoption," was passed. The preamble recites as follows : —

" Whereas, for the encouragement of railroad enterprise, laws creating and regulating railways in this State usually provide for the payment by them, in consideration of their chartered privileges, of a fixed rate upon the capital stock, or the cost of their works, in lieu of all other public impositions whatever; that it is nevertheless contended that the property of such corporations, being largely acquired for or through the growth and extension of their prosperity, should contribute to the charges and expenses essential for municipal and county purposes; that it is desirable, in order to the avoidance of litigation and future dissatisfaction, that such municipal and county taxation shall be authorized, and that the same shall be permanently fixed and regulated."

Sect. 1 then enacts that all taxation upon all railroad companies occupying and using railroads in the State, whether as lessees or otherwise, shall hereafter be made as follows : First, Such companies shall pay upon the cost, equipment, and appendages of said railroads, respectively, a State tax after such rate of taxation as may have heretofore been fixed by law upon such companies, or, in default thereof, after the rate of one-half of one per cent upon such cost. Second, A tax of one per cent on the value of the corporations' real estate (except the track, road-bed, and ten acres at the termini), for the benefit of the counties and municipalities in which it lies.

The ninth section makes the corporation liable for city improvements beneficial to such property, for the purposes for which it is used, except that made subject to State tax, but provides that the laws relating in other respects to such city improvements be not thereby altered.

The act then recites that " whereas certain railroad corporations, owning or occupying railroads in this State, claim exemption from all taxation, whether State, county, or municipal, further than is provided for by their charters, or by special laws for their benefit now existing, which claims, even if legal, subject said corporations to public ill-will, and make it their interest to forego the same and agree to the scheme of taxation hereby established."

Sect. 10 then enacts that any such railroad corporation may,

within six months from the approval of the act, make and execute, under its common seal and the signature of its president, and file in the office of the secretary of State, a declaration, in writing, surrendering all claim to exemption from taxation by it heretofore had or made, and accepting the provisions of this act in lieu thereof.

Sect. 11 repeals all acts and parts of acts inconsistent with said act, and declares that the act shall take effect immediately.

Yard, the tax commissioner provided for in the act, made the statement and valuation required by it with respect to the Morris and Essex Railroad Company's real estate. By this it appears that its real estate, to the amount of $2,089,520, is subject to a tax of one per cent for the years 1873, 1874, and 1875, for the benefit of the counties and municipalities where it is situate.

This valuation was removed to the Supreme Court of New Jersey by *certiorari ;* and the reasons assigned for setting it aside were four: 1st, The commissioner had no power to make the valuation. 2d, The act of 1873 does not apply to the Morris and Essex Railroad Company. 3d, If it does apply, it impairs a contract between the State and the company. 4th, General illegality and violation of vested rights.

The contract was, it is alleged, created by the company's acceptance under its seal of the said third section of the supplement to its charter, approved March 23, 1865.

The Supreme Court rendered a judgment sustaining the assessment.

That judgment having been affirmed by the Court of Errors and Appeals, the State of New Jersey, on the prosecution of the company, brought the case here.

*Mr. Frederick T. Frelinghuysen* and *Mr. J. G. Shipman* for the plaintiff in error.

The supplements of 1865 and 1867, and the acceptance by the Morris and Essex Railroad Company, constitute an irrepealable contract between it and the State. *State* v. *Miller*, 30 N. J. L. 368 ; 2 Kent, Com. 306 ; *Gordon* v. *Appeal Tax Court*, 3 How. 333 ; *Commonwealth* v. *Essex Company*, 13 Gray (Mass.), 239 ; *Miller* v. *The State*, 15 Wall. 478 ; *State* v. *James*,

4 Mo. 570; *Millin* v. *New York & Erie Railroad Co.*, 21
Barb. (N. Y.) 513; *Commonwealth* v. *Canal Company*, 66
Pa. 41; *Zabriski* v. *Hackensack Railroad Co.*, 18 N. J. Eq.
178: *Railroad* v. *Teazie*, 39 Me. 587; *City of Erie* v. *Erie
Canal Co.*, 59 Pa. 174; *Story* v. *Jersey & Bergen Point
Railroad Co.*, 16 N. J. Eq. 13; *State* v. *Person*, 32 N. J. L.
134; *Tomlinson* v. *Jessup*, 15 Wall. 454; *Fletcher* v. *Peck*,
6 Cranch, 87; *State* v. *Jersey City*, 31 N. J. L. 576; *The Home
of the Friendless* v. *Rouse*, 8 Wall. 430; *Humphrey* v. *Pegues*,
16 id. 244; *McGee* v. *Mathias*, 4 id. 156; *Jefferson Branch
Bank* v. *Skelly*, 1 Black, 439; *New Jersey* v. *Wilson*, 7 Cranch,
164; *State Bank of Ohio* v. *Knoop*, 16 How. 369; Cooley,
Const. Lim. 279–281; *McGavisk* v. *The State*, 34 N. J. L.
509.

If the contract be repealable, the legislature did not, by the
act of 1873, in fact, repeal it; nor did it so intend. *E. ie Railway
Co.* v. *The State*, 31 N. J. L. 531; Constitution of New Jersey,
art. 4, sect. 7; *State* v. *Minton*, 3 Zab. (N. J.) 529; *State* v.
*Brannin*, 2 id. 485; *Mechanics' & Traders' Bank* v. *Bridge and
Boyer*, 30 N. J. L. 113; *State* v. *Miller, supra*, and 31 N. J. L.
529; *State* v. *Jersey City, supra*.

*Mr. Robert Gilchrist, contrà.*

The act of April 2, 1873, subjects to the new taxes the Mor-
ris and Essex Railroad Company, unless it has an irrepealable
contract with the State. *Proprietors of Bridges* v. *Hoboken
Company*, 2 Beas. 98; *State* v. *Miller*, 30 N. J. L. 368; 31 id.
529.

The act of 1865 and its acceptance do not create an irrepeal-
able contract as to taxation; nor does that of 1867. The
original act incorporating the company, and the subsequent
amendments and supplements, are to be treated as one act of
legislation; and the act of March 2, 1836, granting a supple-
ment to the charter, which the company accepted, expressly
reserved the right of amendment or repeal. Story and Wash-
ington, JJ., in 4 Wheat. 684; *State* v. *Mayor*, 31 N. J. L.
580; *Newark City Bank* v. *The Assessor*, 30 id. 22; *State* v.
*Bergen*, 34 id. 439; *State* v. *Douglass*, id. 84; *State* v. *Person*,
32 id. 134; *Morris Canal* v. *State*, 4 Zab. (N. J.) 70; *Delaware
& Raritan Canal and Camden & Amboy R. & T. Co.* v. *Rari-*

*tan & Delaware Bay Railroad Co.*, 16 N. J. Eq. 321; *Bank of Utica* v. *Magher*, 18 Johns. (N. Y.) 344; *Oleson* v. *Green Bay Company*, 36 Wis. 389; *Tomlinson* v. *Jessup*, 15 Wall. 454; *Tomlinson* v. *Branch*, id. 460; *Humphreys* v. *Peques*, 16 id. 244; *Walker* v. *Whitehead*, id. 314; *Trask* v. *Maguire*, 18 id. 391; *North Missouri Railroad* v. *Maguire*, 20 id. 46; *United States* v. *Herron*, id. 251; *Tucker* v. *Ferguson*, 22 id. 527; *Iron Bank* v. *Pittsburgh*, 37 Pa. 349; *Morgan* v. *Louisiana*, 93 U. S. 217; *West Wisconsin Railway Co.* v. *Supervisors*, id. 595; *Att'y-Gen.* v. *Lupton Board*, 2 Jur. N. s. 180; Cooley, Const. Lim. 281.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Court of Errors and Appeals of the State of New Jersey.

The plaintiff invokes the jurisdiction of this court, on the ground that an act of the legislature of that State, approved April 2, 1873, concerning taxation of railroad corporations, impairs the obligation of a contract between the State and the plaintiff, found in an act of March 23, 1865, and the written acceptance of that act by the company, dated April 24 of that year.

The third section of the act of 1865 reads as follows: —

"Be it enacted, that the tax of one-half of one per cent provided by their said original act of incorporation, to be paid by the said company to the State whenever the net earnings of the said company amount to seven per cent upon the cost of the road, shall be paid at the expiration of one year from the time when the road of the said company shall be open and in use to Phillipsburgh, and annually thereafter, which tax shall be in lieu and satisfaction of all other taxation or imposition whatsoever, by or under the authority of this State, or any law thereof: *Provided*, that this section shall not go into effect or be binding upon the said company until the said company, by an instrument duly executed under its corporate seal, and filed in the office of the secretary of State, shall have signified its assent hereto, which assent shall be signified within sixty days after the passage of this act, or this act shall be void."

The act of 1873 imposed a more burdensome tax than this on all railroad companies not protected by irrepealable contracts; and the Court of Errors held that this statute was applicable

to the plaintiff, because the contract of 1865, which had been formally accepted by the company, was repealable by the legislature of the State.

The single question, therefore, for our consideration is, whether the act of March 23, 1865, and its acceptance by the Morris and Essex Railroad Company, constituted a contract which could not be impaired by any subsequent legislation of the State.

The Court of Errors decided, that, while the act of 1865 was a contract, it must be taken in connection with other legislation of the State on that subject, by which the legislature reserved the right to alter and amend the contract, and that this right entered into and became a part of it; therefore, the exercise of this right did not impair its obligation.

The solution of the question here presented must depend, first, upon an inquiry into this supposed reservation of power; and, secondly, into the essential character of the contract of 1865.

The case before us differs from those in which, by the Constitution of some of the States, this right to alter, amend, and repeal all laws creating corporate privileges becomes an inalienable legislative power. The power thus conferred cannot be limited or bargained away by any act of the legislature, because the power itself is beyond legislative control. The right asserted in this case to amend or repeal legislative grants to corporations, being itself but the expression of the will or purpose of the legislature for one particular session or term of the State of New Jersey, cannot bind any succeeding legislature which may choose to make a grant or a contract not subject to be altered or repealed; or, if any succeeding legislature to that of 1846, which enacted that "the charter of every corporation which shall hereafter be granted by the legislature shall be subject to alteration, suspension, and repeal in the discretion of the legislature," shall grant a charter or amend a charter, declaring in the act that it shall not be subject to alteration and repeal, the former act is of no force in that case. So it can by a general law repeal this general reservation of the right to repeal, and all special reservations in separate charters. It follows that, unlike the constitutional provision in other States,

it is in New Jersey a question, in every case of a contract made by the legislature, whether that body intended that the right to change or repeal it should inhere in it, or whether, like other contracts, it was perfect, and not within the power of the legislature to impair its obligation.

The Morris and Essex Railroad Company was chartered by an act of the legislature, Jan. 29, 1835. Sect. 16 enacts that, "as soon as the net proceeds of said railroad shall amount to seven per cent (in any one year) upon its cost, the said corporation shall pay to the treasurer of the State a tax of one-half of one per cent on the cost of said road, to be paid annually thereafter on the first Monday of January of each year; provided, that no other tax or impost shall be levied or assessed."

By sect. 20, "the legislature reserve to themselves the right to alter, amend, or repeal this act, whenever they think proper."

The next succeeding legislature, in a supplement to the charter, repealed sect. 20, and substituted this language : "The legislature reserve to themselves the right to alter or amend this supplement, or the act to which this is a supplement, whenever the public good may require it." It is this last clause which counsel insist became, by operation of law, a part of the contract of the act of 1865, concerning taxation, already quoted.

The argument is that the original charter, and all subsequent amendments and supplements, are to be treated merely as parts of one act, and that this reserve of the right to alter or amend became a part of every new law which has reference to that railroad company.

In support of this proposition, the cases of *Newark City Bank* v. *The Assessor*, 30 N. J. L. 22, and *State* v. *Bergen*, 34 id. 439, are cited.

They announce the general principle that a charter and its amendments are to be considered as acts *in pari materia* in construing them, and they do little more. The precise point held is, that a city charter, being declared to be a public act, supplements and amendments to it are also to be treated as public acts. But this falls short of establishing the principle that a

reservation in a charter to a private corporation, of the right to repeal or amend it, shall extend to every subsequent amendment of the charter. It is not easy to see why such a provision should be extended beyond the terms in which it is expressed; and all the force which properly belongs to it is given when the exemption from the constitutional provision against impairing the obligation of contracts is extended as far as the language of the exemption justifies, and it should be extended no further by implication. The language in the statute we are construing covers the supplement of 1836 and the original act, and nothing more, — "the right to alter or amend this supplement, or the act to which this is a supplement," — leaving future supplements to make the same reservation, if the legislature so intends.

Sect. 6 of the general act of 1846 is by its terms limited to charters of corporations granted after its passage; and it requires a very strong implication to make it applicable to amendments to charters in existence before its passage, though the amendments were executed subsequently.

But, as we have already said, since the legislature which passed the act of 1865 had the power to make a contract which should not be subject to repeal or modification by one of the parties to it without the consent of the other, the main question here is, Did they intend to make such a contract?

The principal function of a legislative body is not to make contracts, but to make laws. These laws are put into a form which, in all countries using the English language and inheriting the English common law, is called a statute.

Unless forbidden by some exceptional constitutional provision, the same authority which can make a law can repeal it. The Constitution of the United States has imposed such a limitation upon the legislative power of all the States, by declaring that no State shall pass any law impairing the obligation of a contract. The frequency with which this court has been called on to declare State laws void, because they do impair the obligation of contracts, shows how very important and far-reaching that provision is.

It may safely be said that in far the larger number of cases brought to this court under that clause of the Constitution, the

question has been as to the existence and nature of the contract, and not the construction of the law which is supposed to impair it; and the greatest trouble we have had on this point has been in regard to what may be called legislative contracts, — contracts found in statute laws of the State, if they existed at all. It has become the established law of this court that a legislative enactment, in the ordinary form of a statute, may contain provisions which, when accepted as the basis of action by individuals or corporations, become contracts between them and the State within the protection of the clause referred to of the Federal Constitution.

The difficulty in this class of cases has always been to distinguish what is intended by the legislature to be an exercise of its ordinary legislative function in making laws, which, like other laws, are subject to its full control by future amendments and repeals, from what is intended to become a contract between the State and other parties when the terms of the statute have been accepted and acted upon by those parties. This has always been a very nice point; and, when the supposed contract exists only in the form of a general statute, doubts still recur, after all our decisions on that class of questions.

These doubts are increased when the terms of the statute relate to a matter which is in its essential nature one of exclusive legislative cognizance, and which at the same time requires money or labor to be expended by individuals or corporations. In such cases, the legislature may be supposed to be merely exercising its power of regulating the burdens which are to be borne for the public service, in which case it could be modified from time to time as legislative discretion might determine; or it might be a contract founded on a fair consideration moving from the party concerned to the State, and which in that case would be beyond the power of the State to impair. Statutes fixing the taxes to be levied on corporations, partake, in a striking manner, of this dual character, and require for their construction a critical examination of their terms, and of the circumstances under which they are created.

The writer of this opinion has always believed, and believes now, that one legislature of a State has no power to bargain away the right of any succeeding legislature to levy taxes in

as full a manner as the Constitution will permit. But, so long as the majority of this court adhere to the contrary doctrine, he must, when the question arises, join with the other judges in considering whether such a contract has been made.

In the case now under consideration, it is conceded on all hands that the act of 1865 was a contract for a tax of one-half of one per cent per annum on the cost of the Morris and Essex Railroad, and no more. But counsel for defendant says the contract was repealable; that the legislature of its own volition could impose other and more burdensome taxes, at its discretion; that it was a contract so long as the legislature of New Jersey was satisfied with it, and no longer. It is conceded, also, that this construction of it cannot be sustained, unless we are bound to import into it either the reservation clause of the act of 1836, or what is called the interpretation act of 1846. We have already shown how little reason there is for doing this on general principles of construction. We think it still clearer that it cannot be done, because it is inconsistent with the legislative intent in passing the act of 1865.

1. The legislature was not willing to rest this contract in the usual statutory form alone, depending for its validity as a contract upon some action of the corporation under it to bind it to its terms; but they required of the company a formal written acceptance within sixty days, or else it became wholly inoperative. The company duly executed this acceptance. There was, then, the complete formal, written instrument evidencing this contract, signed by the presiding officers of the two houses of the New Jersey legislature, and the governor, for one party, and the president and secretary and seal of the railroad company, of the other party. It does seem as if the legislative intention was to make a contract in the same manner, and on the same terms of equal obligation, as other contracts are made, and not to pass a statute which it could repeal or amend the day after it was signed by the parties.

2. There was a well-understood subject of contract. The corporation wished authority to build a branch road or roads, with favorable route, and power to acquire right of way; and the State wished the vexed question of the right to tax the corporation to be settled. For the company denied the right

of the State to tax them under their charter, until the road paid them a net income of seven per cent per annum on its cost.

The legislature said, If you will consent to pay the one-half of one per cent tax as originally agreed, and commence to do this within one year from the time the road shall be open and in use to Phillipsburgh, we will authorize an increase of ten millions of your capital stock and the franchises you seek as to the branch roads, and will agree that the tax shall be fixed at one-half of one per cent. Here was a subject of disagreement adjusted, additional rights granted, and the tax fixed, both as to its rate and the time of commencement.

Can it be believed that it was intended by either party to this contract that, after it was signed by both parties, one was bound for ever, and the other only for a day? That it was intended to be a part of the contract that the State of New Jersey was, at her option, to be bound or not? That there was implied in it, when it was offered to the acceptance of the company, the right on the part of the legislature to alter or amend it at pleasure? If the State intended to reserve this right, what necessity for asking the company to accept in such formal manner the terms of a contract which the State could at any time make to suit itself?

3. The language used by the legislature is inconsistent with the right claimed.

"Which tax (one-half of one per cent) shall be in lieu and satisfaction of all other taxation or impositions whatsoever by or under authority of this State, or any law thereof." Is there here to be implied "except such laws as may hereafter be enacted"? Such a provision would be to nullify the whole contract. How could the tax be in lieu and satisfaction of all other taxation, if other taxes might be imposed next day? or how can it be said to be in satisfaction of all taxes whatsoever under authority of the State, if the State could immediately impose another and more burdensome tax?

We admit the force of the doctrine, that, when it is asserted that a State has bargained away her right of taxation in a given case, the contract must be clear, and cannot be made out by dubious implications.

But of the existence of the present contract there is no doubt. Its meaning and its terms are clear enough, and, taken alone, no one denies but that it is a contract which would be protected by the Constitution of the United States. The implication is of a right to revoke it, and comes from the other quarter, and is one which we do not think exists by fair construction, and which we do not feel at liberty to import into the contract to defeat its manifest purpose.

*Judgment reversed, and cause remanded for further proceedings in conformity to this opinion.*

MR. JUSTICE BRADLEY took no part in the consideration of this case.