WESTERN  N.  C.  RAILROAD  COMPANY  v.  W.  W.  ROLLINS.

*Corporations—Legislative Power—Altering or Repealing Charter*
*Trusts and Trustees.*

1. The legislature has the power, under section one, article eight, of the constitution, to alter or repeal all general laws and special acts by which corporations, associations and joint stock companies are formed.
2. Where the dissolution of a corporation is had by act of assembly or by decree of court, it is proper to appoint a suitable person by the repealing act, or a receiver by the court, to collect and apply the assets of the annulled body in the discharge of its liabilities.    And it is compe-

tent to select another corporation, as well as a natural person, to administer the assets.

3. In the absence of such provision in the repealing act, the trusts in favor of creditors and stockholders will attach to the transferred property in the hands of the substituted trustee.

(*Mills* v *Williams*, 11 Ired., 558; *State* v. *Petway*, 2 Jones Eq , 396, cited and approved )

CONTROVERSY submitted without action under section 315 of the code, and heard at Fall Term, 1879, of BUNCOMBE Superior Court, before *Graves, J.*

The plaintiff company claims the right to recover all the property of the Western Division of the Western North Carolina railroad company in the hands of the defendant who was president of said Western Division, and the defendant resists the same upon the ground that the act of assembly dissolving the Western Division and transferring its property to the plaintiff, is unconstitutional and void. Upon consideration of the question, His Honor was of opinion with defendant, and the plaintiff appealed from the judgment.

*Messrs. Battle & Mordecai, J. S. Henderson, T. F. Davidson* and *W. H. Malone,* for plaintiff.

*Messrs. J. H. Merrimon, M. Erwin* and *C. M. McLoud,* for defendant.

SMITH, C. J.    The Western North Carolina railroad was incorporated and formed under an act of the general assembly, ratified on the 15th day of February, 1855, to construct and operate a railroad from the town of Salisbury " to some point on the French Broad river, beyond the Blue Ridge, and if the legislature shall hereafter determine, to such point as it shall designate at a future session." Acts 1854, 55 ch. 258.    By successive amendments and after surveys, the projected road was extended westward by branches, one of

which was to terminate " at a point on the line of the Blue
Ridge railroad on the Tennessee river, or on the Tennessee
line at or near Ducktown in the county of Cherokee ;" and
the other, " at or near Paint Rock." Acts 1858, 59 ch. 170.

By the act of August, 1868, the contemplated road was
severed at the French Broad river into " two separate and
distinct divisions," one to be called the Eastern Division
and to embrace the road to the east; the other, the Western
Division to embrace the divergent lines to the west of the
river. The property, appropriations and subscription of
stock are left in possession of the Eastern Division, to be
used exclusively in the completion of its part of the divided
road, under the management of the existing board of direc-
tors, while the Western Division is placed under the direc-
tion of another board of directors, constituted by appoint-
ments of the state and individual stockholders in the new
organization under the act, to whom is entrusted the "selec-
tion of its own officers and agents, a distinct treasurer, and
otherwise independent of the other ;" and for its construc-
tion, funds are to be raised by stock subscriptions, as in the
original act of incorporation, and the aggregate capital of
the Western North Carolina railroad company, for the two
divisions, is increased to a sum not exceeding twelve mil-
lions of dollars. Private acts, 1868, ch. 24.

This statute was re-enacted and confirmed by two subse-
quent acts, one ratified December 18th 1868, and the other,
January 29th, 1869. Acts 1868–'69, chs. 7 and 20, repealed
by act of April 5th, 1871, (acts 1870–'71, ch. 249,) and again
restored with modifications, and the repealing act itself re-
pealed by the act of February 8th, 1872, and power was con-
ferred upon the revived company " to lease or sell or other-
wise dispose of the whole or any part of said road to any
person or corporation on such terms as may be agreed on,"
in order to its early completion. Acts 1871–'72, ch. 150.

On March 13th, 1879, was passed the act whose validity is

called in question in the present suit, the first section of which repeals the acts of August 19th, 1868, of January 29th, 1869, and of February 8th, 1872, by special mention, " and any and all other acts and parts of acts, creating, recogniz- ing or continuing in existence the Western Division of the Western North Carolina railroad company."

The second section is in these words : That all the prop- erty, rights, credits, rights of action and effects that now exist in favor of the said Western Division of the Western North Carolina railroad company, or which may result from any existing matters, causes, circumstances or contin- gencies, shall become absolutely the rights and property of the Western North Carolina railroad company, and the said Western North Carolina railroad company is hereby authorized and empowered to prosecute, defend and manage any and all suits and actions pending in the courts of this state, in the courts of the United States, or the courts of any other state or territory, in reference to the property, rights and credits of the said Western Division of the Western North Carolina railroad company; *Provided,* the said West- ern North Carolina railroad company shall not be liable or responsible for any debt, contract, obligation or other lia- bility of the said Western Division of the Western North Carolina railroad company, beyond the sum it shall actu- ally realize and receive from the transfer of property, rights, credits, &c., provided for in this section.

The third section requires officers, directors and agents of the dissolved company, within thirty days after demand of the Governor, to surrender to the directors of the Western North Carolina railroad company, "all books, records, pa- pers, moneys, bonds, property, contracts, effects and evi- dences of debt" in their possession, or under their control, and makes their failure or refusal a misdemeanor, punisha- ble by fine or imprisonment.

The defendant, who was, at the time of the passing of the

act, president of the annulled company, has in his hands ninety-four first mortgage bonds, of one thousand dollars each, of the Florida Central railroad company, which with other of its effects are sought to be recovered in this action. The claim is resisted on the ground of the unconstitutionality of the act, and for the further fact, disclosed in the case agreed, that there are outstanding debts of the company, most of them reduced to judgments, fifty thousand dollars or more in amount, which the defendant alleges attach as a trust to the funds he holds, and must be paid therefrom. The state subscribed six and two-third millions to the capital stock of the Western Division, and bonds were issued therefor, while private stockholders own of paid-up stock fifty thousand dollars whereof all except one thousand dollars was paid by a sale and transfer of the property of the Buncombe Turnpike company. Upon this statement of facts two questions only are presented for determination.

1. Has the general assembly the power to destroy by a mere enactment the existence of the organization designated the "Western Division of the North Carolina railroad company"? and if it has,

2. Can it transfer and vest the property of the annulled company in a new corporation, bearing the name, but not being in fact the same, as that formed under the act of 1855, so as to entitle the plaintiff to sue and recover?

The solution of these enquiries disposes of the two appeals.

*First*—As to the repealing power exercised in the first section and its effect: The constitution of 1868 contains this provision, viz: "Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes and in cases where, in the judgment of the legislature, the object of the corporation cannot be attained under general laws. All general laws and special

acts, passed pursuant to this section, may be altered from time to time or repealed. Art. VIII, § 1. And the term "corporation," as used in the article, is defined in section three, "to include all associations and joint stock compani es having any of the powers and privileges of corporations, not possessed by individuals or partnerships."

Invested with the attributes conferred by the various enactments which form and shape the Western Division, as a separate and distinct organic body, with capacity to contract debts, to sue and be sued, to mortgage the road to secure borrowed money, to lease and sell it, to appoint its own officers and agents and manage its own affairs, (with a succession which preserves its own integrity amidst changes among its members) if the possession of these facilities do not constitute a corporation, it will be difficult to point out any absent that would have the effect, within the purview of the constitution. But it is not material to solve the question, so earnestly and elaborately pressed in the argument, whether the Western Division by the effect of the legislation became and was a corporate body itself, or an agency and branch only of the original Western North Carolina railroad company, since in either case the effect of the legislation is the same. If it was but an agency, the same efficient power that created could destroy and again restore to life, as was done by antecedent acts. If it was a corporate body, it was formed under the controlling force of the constitution, and remained subject to the repealing power of the general assembly.

The case mainly relied on in opposition to the power to dissolve is that of *New Jersey* v. *Yard*, 95 U. S., 104, with a brief review of which we will be content. In 1835, the Morris and Essex railroad company was chartered. In March, 1865, an amendment was made authorizing the construction of a branch road. Two years later another amendment was added. In 1846 the legislature enacted "that

the charter of any corporation which should thereafter be granted by the legislature should be subject to alteration, suspension and repeal in the discretion of the legislature." In March, 1862, an act was passed for the assessment and taxation of the full amount of the capital stock of corporations, paid in and its accumulation, and the right to pass and enforce this enactment was the point before the court. Mr. Justice MILLER, speaking for the court, uses this language: "The case before us differs from those in which, by the constitution of some of the states, this right to alter, amend and repeal all laws creating corporate privileges becomes an inalienable legislative power. The power thus conferred cannot be limited or bargained away by any act of the legislature, because the power itself is beyond legislative control. The right in this case to amend or repeal legislative grants to corporations, being itself but the expression of the will or purpose of the legislature for one particular session or term of the state of New Jersey, cannot bind any succeeding legislature which may choose to make a grant, or a contract not subject to be altered or repealed. * * * * It follows that unlike the constitutional provision in other states, it is in New Jersey a question in every case of a contract made by the legislature, whether that body intended that the right to change or repeal it should inhere in it, or whether, like other contracts, it was perfect and not within the power of the legislature to impair its obligation."

The reasoning of the court, so far from denying concedes the power to modify or dissolve a corporation, when reserved in the fundamental law in force when the corporation was formed, and maintains the competency of the general assembly, notwithstanding a previous general enactment of similar import to enter into an inviolable contract, and that whether this is done in a particular case is a question of construction and intent. *Tomlinson* v. *Jessup,* 15 Wall, 454; *Holyoke* v. *Lyman, Id.,* 500; *Miller* v. *State, Id.,* 498.

34

*Secondly.* As to the assignment of the property to the plaintiff and the right of recovery from the defendant: The dissolution of the Western Division, as an organized body, possessing property and owing debts, renders necessary the appointment of a suitable person to take charge of, collect and apply its assets in the discharge of its liabilities. When the dissolution is brought about by a judgment of the court, a receiver is appointed for the purpose, who acts under its supervision and control. When it is the result of a lawful act of legislation, it is reasonable that the repealing act should make provision for such administration, and we see no reason why the plaintiff should not be thus appointed as well as a natural person. The transfer to the re-incorporated Western North Carolina railroad company is absolute, it is true, but (as we understand the proviso) in full recognition of the trusts in favor of creditors and their right of satisfaction therefrom. Its language clearly imports this in declaring that the plaintiff company shall not be liable or responsible for any debt, contract, obligation or other liability of the said Western Division of the Western North Carolina railroad company, beyond the sum it shall actually realize and receive from the transfer of property, rights, credits," &c., a distinct implication of such liability to the extent and value of the funds received. But in the absence of such provision, the trusts in favor of creditors and of stockholders, if there be any surplus, would attach to the transferred property and the plaintiff could be compelled to discharge the trusts therefrom. The creditors as such, are not complaining of this portion of the act, and so far as we know acquiesce in the transfer. They are not represented by the contesting defendant, nor is he the protector of their rights in the premises. He can only resist the legal operation of the act which takes from him the possession of that which he no longer holds as an officer, and places it in other hands. His

objection lies solely to the change of trustees, unaffected by inhering trusts for others.

The validity of the act is fully sustained by the case of *Read* v. *Frankford Bank*, 23 Maine, 318. On March 29th, 1841, the legislature passed an act repealing the charter of the defendant and appointing receivers who were required to demand and receive from the officers, the property of the bank in their hands. On April 16th following, another act was passed requiring creditors in order to entitle them to participate in the distribution of the assets and prevent their claims from being barred, to exhibit and prove them to the receivers on or before the 1st day of July thereafter. The repeal was by virtue of a power reserved in a general law passed in 1831. The bank was incorporated afterwards and subject to its provisions. Some creditors who had previously attached were the plaintiffs in the action, asserting their lien. The judge delivering the opinion of the court says: " The obligation of the contract between the plaintiffs and the bank was not impaired by a repeal of its charter, but the mode of obtaining indemnity for its violation was changed. The bank was created by the legislature, and by the charter there was no provision for the prosecution of suits against it, if that charter should be declared by the same power forfeited and void. But a mode has been provided in the repealing act, by which creditors are enabled to obtain satisfaction for their claims to the extent of the means existing therefor."

Sustaining the validity of section two, it is needless to consider that which follows and enforces compliance with appropriate penalties. For the same reasons it must also be sustained.

It is to be observed that the defendant sustains towards the controversy the relation of an officer of an extinct organization, and sets up a defence not open to the debtor, but to the creditor only, who, as we have before remarked, may be content with the legislation and substitution of the plaintiff as trustee in his place. While it is true that each cor-

porator may object to the repeal or to any material modification of the provisions of a charter granted for other than municipal purposes, and constituting a legislative contract protected by the constitution of the United States, yet in the absence of complaint, acquiescence in the change may be inferred, and ultimately its acceptance by the corporators. *Mills* v. *Williams*, 11 Ired., 558; *State* v. *Petway*, 2 Jones Eq., 396.

It must therefore be declared that there is error in the ruling of the court that sections two and three of the act of March 13th, 1879, are inoperative and void; and the plaintiff's exceptions to the ruling are sustained. Judgment must therefore be entered that the defendant deliver to the plaintiff the bonds and other effects and property of the Western Division of the Western North Carolina railroad company, as claimed in the action, and it is so ordered.

    Error.                               Reversed.

- In same case upon defendant's appeal:

SMITH, C. J. The matters involved in this appeal are considered and discussed in the opinion in the plaintiff's appeal, and for the reasons therein stated it must be declared there is no error in the ruling of the court to which the defendant excepts, and his exception is overruled.