HENRY S. LITTLE, RECEIVER, &c., v. SAMUEL D. BOWERS, COMPTROLLER, &c.

The Central Railroad Company of New Jersey has no irrepealable contract with the state, limiting the exercise of the taxing power.

On *certiorari* to review taxes for the years 1876 to 1881, both inclusive, levied under the act of April 2d, 1873. *Rev.,* *p.* 1166.

By an act approved February 26th, 1847, the Somerville and Easton Railroad Company was incorporated, and power was given it to hold land at the commencement and termination of said railroad at Somerville and the Delaware river.

The fourteenth section of this act provided that as soon as the net proceeds of said railroad amounted to six per cent. on its cost, the corporation should pay to the treasurer of the state a tax of one-half of one per cent. on the cost of said road, to be paid annually thereafter on the first Monday of January of each year; provided *that no other tax or impost should be levied or assessed upon the corporation.*

A supplement to the charter passed February 22d, 1849, gave power to the Somerville and Easton Railroad Company "to purchase the railroad from Somerville, in the county of Somerset, to the Sound, in the township of Elizabeth, in the county of Essex, constructed under and by virtue of an act entitled 'An act to incorporate the Elizabethtown and Somerville Railroad Company.'"

By section 3 of the above act, the name of the combined roads, when purchase was completed, was to be "The Central Railroad Company of New Jersey," and all and every provision of the original act was to extend and be applicable to the railroad so purchased.

By section 5 of the same act, it was enacted "that it should be lawful for the said company to purchase and hold lands at the termination of the said railroad at the Sound, in the township of Elizabeth, in the county of Essex, not to ex-

ceed twenty acres, for the purposes of erecting thereupon such depots," &c. See *Pamph. L.* 1849, § 5.

The purchase of the Elizabethtown and Somerville railroad, and consequent change of name of the company to "The Central Railroad Company of New Jersey," dates from April 1st, 1849.

By an act of March 17th, 1854, the new company was given power to purchase or lease or operate any railroad which may connect with or intersect their road, &c. See *Pamph. L.* 1854, §§ 3, 4.

The eighth section of the above act enacts " that it shall be the duty of the treasurer of said company, on the first Monday of January of each and every year hereafter, to pay to the treasurer of this state a tax of one-half of one per centum upon the cost of said road, as shown by the annual report of such cost, made the year preceding the first Monday of January, in which such payment as aforesaid shall be made, provided *that no other tax or impost shall be levied or assessed upon the said company,*" and repeals section 14 of the original act (February 26th, 1847.)

And by the ninth section of this act of 1854, it was enacted "that if the said company shall, within six months from the passage of this act, file in writing their assent to and acceptance of all the provisions of this act, then the said act shall take effect immediately thereafter, but in case the said company shall refuse or neglect so to do within the time specified, then the said act shall be null and void."

*Within the six months the said Central Railroad of New Jersey filed a paper under its seal, accepting the provisions of the above act.*

The last supplement to the charter was passed March 17th, 1870, and it was enacted that the company should pay the tax of one-half of one per cent. as before provided, and *that no other tax or impost should be levied or assessed upon said company.*

It is conceded that the Central Railroad Company of New Jersey never accepted the provisions of the act of 1873, or of any of the general laws respecting taxation of said railroad

---

Little v. Bowers.

---

company, but claims only to be taxable under the provisions of its charter and supplements, and has, up to this time, and during the years mentioned in the writs of *certiorari*, been so taxed, and paid to the treasurer of the state the taxes levied under the provisions of the eighth section of the act of 1854. The said act was accepted within the six months prescribed.

By the original act the company was permitted to hold five acres of land at each depot along the line of the road, and by the act of March 17th, 1854, it was enacted that the new company should be regulated and governed by the provisions of the charter and supplements heretofore granted to the old company.

The prosecutor insists that all the property in dispute is now and has been used for railroad purposes; and therefore, by the charter and supplements, and the acceptance heretofore filed by the company, is exempt from taxation other than the tax of one-half of one per cent. to be paid to the state.

The prosecutor claims that the taxes assessed for the various years are illegal for various reasons:

1st. Because, by its charter and supplements, and its acceptance of the provision of the act above mentioned, the Central Railroad Company of New Jersey is exempt from municipal taxation.

2d. The act of 1873 does not apply to this company.

3d. If it does apply, it impairs the contract made between the state and the company—the company having complied with all the requirements of the law, and having paid the tax of one-half of one per cent. to the state treasurer.

4th. The taxing and enforcing its payment violates vested rights.

The only question to be considered in this case is whether the act of March 17th, 1854, and its acceptance by the Central Railroad Company of New Jersey, constituted a contract which could not be impaired by any subsequent legislation of the state.

Argued at February Term, 1884, before Justices KNAPP, DIXON and MAGIE.

For the prosecutor, *W. R. Wilson* and *B. Williamson.*

For the defendants, *Frank Bergen.*

The opinion of the court was delivered by

DIXON, J.   The claim of the Central Railroad Company in this case, is that by force of the supplement to the act to incorporate the Somerville and Easton Railroad Company, approved March 17th, 1854, (*Pamph. L., p.* 524,) and the company's written assent to and acceptance of the same, an irrepealable contract was made between the state and the corporation to the effect that the latter should annually pay a tax of one-half of one per centum upon the cost of the road, and that no other tax or impost should be levied or assessed upon the company.

If the question were an open one, I should have no hesitation in reaching the conclusion that the power of taxation could not be made the subject of contract by the legislature, that it was entrusted to the legislature to be exercised and not to be destroyed or abridged, that as it resided in our prototype, the English parliament, unimpaired by acts of previous sessions of that body, so it was possessed by our legislature, unfettered save as fundamental law restrained it, and that the constitutional clause protecting contracts could not, with reason, be extended to what, in all our history, had been regarded, not as a bargain between parties at liberty to assent or dissent, but as an exertion of sovereign power controlling the willing and unwilling alike.   But unfortunately, as I think, the question is closed by judicial decisions which no court in this state can disturb, and unless these decisions shall be reversed, it must be conceded that the legislature has power to barter away this essential attribute of government.

But in view of the extraordinary character of this power, ·of the great inconvenience consequent upon even its occasional use, of the utter destruction of government that would follow its frequent and impartial exercise, courts must feel constrained to decide that it has been put in force only when the

opposite judgment cannot be formed by a rational mind. If to doubt whether the state has parted with any public right is to be resolved that it has not, certainly language can scarcely express the reluctance of courts to infer that this most important of all public rights has been surrendered.

With these prepossessions, then, I come to consider whether the alleged contract was made.

The act of March 17th, 1854, is a supplement to the charter of the Somerville and Easton Railroad Company, which was granted February 26th, 1847. On February 14th, 1846, the legislature passed a general law concerning corporations (*Pamph. L., p.* 16,) the sixth section of which enacted that the charter of every corporation which should thereafter be granted, should be subject to alteration, suspension and repeal, in the discretion of the legislature. This provision did not bind subsequent legislatures so that they could not grant irrepealable charters, but it created a law which can never justly be put out of sight in determining whether any charter granted was designed to be irrepealable. All acts of the legislature are performed in contemplation of existing laws, and repeals by implication are not favored, and hence this law of 1846 is to be considered as embodied in every corporate charter thereafter passed, unless a purpose to exclude it be plainly perceived.

In the charter of the Somerville and Easton Railroad Company, approved in 1847, no intimation of such a purpose exists, nor does there in the supplement of 1854, unless it be found in the ninth section thereof, which declares that the supplement shall take effect only in case, within six months after its passage, the company shall file a written assent to and acceptance of all its provisions. This clause is relied upon to establish the irrepealable contract.

But it appears to me to be entitled to no such scope. It is the general rule that the charters of private corporations become operative only upon their acceptance by the persons interested. Sometimes this acceptance is presumed from the advantageous character of the grant; sometimes it is indicated by

an exercise of the powers granted; in the present case, the legislature chose to require that it should be evidenced by an express declaration made within a limited time. But whether the needed assent is to be given in one form or another, seems of little importance in determining the nature of the rights conferred. The selection of any form should not give rise to an inference that it was intended to repeal, *pro hac vice*, a prior law otherwise consistent with the charter, and so to abridge the taxing power of the state. Whether the assent of the company was necessary for the efficiency of this supplement may be doubted, but since it so materially enlarged the powers and correlative duties of the corporation, the legislature might have fairly considered it to be more than an alteration of the charter, and in that aspect the requirement of a prompt and formal acceptance was only a reasonable precaution. This is all the significance that should be ascribed to the section in question.

But it is said that the decision of the Supreme Court of the United States, in *New Jersey* v. *Yard*, 95 *U. S.* 104, necessitates the opposite conclusion. I do not think so. That case and the present are quite dissimilar in the following important particulars:

1. The charter of the Morris and Essex Railroad Company was granted in 1835, and therefore was not affected by the law of 1846 above mentioned, and the federal court seems to have been unwilling to hold that the act of 1846 was applicable even to subsequent amendments of that charter. This left the power of alteration dependent on a supplement passed in 1836, which expressly confined the power to itself and the original charter. The claim of exemption rested upon a supplement passed in 1865, which the court therefore adjudged to be an absolute grant. But in the case before us, there can be no doubt of the propriety of interpreting the charter of the Central Railroad Company and its supplements, with the act of 1846 in view.

2. The acceptance required from the Morris and Essex Railroad Company by the supplement of 1865 was not of the

whole act, but only of the section imposing the tax, as if it were designed to put that section upon some other footing than the rest of the statute; but in the Central company's act of 1854, the acceptance was to embrace all the provisions of the supplement, so that the taxing clause is in no way specialized.

3. In the Morris and Essex company's case, the Supreme Court regarded the state's right to tax the company as a vexed question prior to 1865, which the legislature desired to have settled, and which therefore seemed to be in a posture for adjustment by contract; but it does not appear that before the act of 1854, or ever until recently, any dispute was raised against the power of the state to tax the Central company, or that, in assenting to that supplement, the company was yielding any consideration for what, if the present claim be good, possessed enormous value.

4. The language of the section imposing the tax upon the Morris and Essex Railroad Company is itself suggestive of a contract for exemption; it declared that that tax should be in lieu and satisfaction of all other taxation or imposition whatsoever, by or under the authority of this state, or any law thereof. In the Central company's act of 1854, no such terms are used; it simply directs a tax of one-half of one per centum to be paid, provided that no other tax or impost shall be levied or assessed upon the said company. This proviso I understand to be merely a declaration that the legislature then intended that the company should not then be chargeable with any other tax than the one-half of one per centum. Without the proviso, it might have been claimed that the tax act of March 3d, 1854, (*Pamph. L.*, p. 296,) subjected all the real and personal estate of the company to taxation; with it, such an inference was rebutted.

These differences between the situations of the two companies involve the main grounds on which the Supreme Court of the United States based its decision, and they deprive the present claim of any support from the judgment of that high tribunal.

The taxes under review should be affirmed, with costs.