IN THE MATTER OF THE SALE OF THE PROPERTY OF THE PRESIDENT AND DIRECTORS OF THE PATERSON AND HUDSON RIVER RAILROAD COMPANY TO THE ERIE RAILROAD COMPANY.

MARTHA K. VAN RIPER, APPELLANT, v. THE PRESIDENT AND DIRECTORS OF THE PATERSON AND HUDSON RIVER RAILROAD COMPANY, RESPONDENT.

Argued January 12 and 19, 1953—Decided February 9, 1953.

*Mr. Ervan F. Kushner* argued the cause for the appellant (*Messrs. Kreamer & Kreamer*, attorneys).

*Mr. Duane E. Minard* argued the cause for the respondent (*Messrs. Minard, Cooper, Gaffey & Webb*, attorneys).

The opinion of the court was delivered by

BURLING, J.   This is an appeal by Martha K. Van Riper, hereinafter referred to as the appellant, from an order of the Superior Court, Law Division, confirming a report of appraisers filed in that court in proceedings instituted by The President and Directors of the Paterson and Hudson River Railroad Company, a New Jersey corporation (hereinafter referred to as the respondent) to determine the "full market value of * * * stock" (*R. S.* 14:12–6) of the respondent held by stockholders who objected to a proposed sale of the respondent's property and franchises to Erie Railroad Company.

Respondent was created by an act of the Legislature of this State, *L.* 1831, *p.* 24, *etc.,* entitled "An Act to incorporate the Paterson and Hudson River Rail Road Company." The statute detailed the corporation's capital requirements, its powers and privileges, the method for election of its directors and officers and the location and scope of the railroad facilities it was authorized to construct and operate.   Section 14 of the act provided "That the road or roads authorized by this act, be and the same are hereby declared a public highway, and free for the passage of any rail road carriage thereon, with passengers or property, upon payment of the tolls prescribed by this act. * * *" (*L.* 1831, at *p.* 31).   Section 19 specifically enacted "That this act shall be deemed and taken as a public act, and shall at all times be recognized as such, in all courts and places whatsoever."   There was no express power reserved by the Legislature to alter, amend or repeal the provisions of this act, nor was there an express relinquishment of such power.   The Legislature, however, provided (*sec.* 17) that "at any time after the expiration of fifty years, from the completion of said road, the legislature

of this state may cause an appraisement of the said road" and acquire the same at a valuation not to exceed "the first cost" thereof (*L*. 1831, *pp*. 31, 32). The parties to this appeal have called to our attention no supplementary or amendatory legislation directly and specifically changing the pertinent provisions of the 1831 act although several later enactments increased the scope of the corporation's activities.

By virtue of various transactions and legislation subsequent to 1831 the Erie Railroad Company became the lessee of the respondent's property and franchise, and as such lessee it has been in possession thereof for many years. Erie at the time these proceedings began had acquired 12,232 shares of the 12,600 shares of capital stock of the respondent outstanding; of the remainder, 30 shares were owned by the appellant.

The respondent, by agreement dated March 24, 1952, agreed to sell to Erie all respondent's property, assets and franchises. The appellant declined to acquiesce in the transaction and notified the respondent of her objection thereto. The respondent thereupon filed a petition under the provisions of *R. S*. 48:12–15, as amended by *L*. 1941, *c*. 200, *p*. 590, *sec*. 1, and *R. S*. 14:12–6, in the Superior Court, Law Division, for the appointment of three disinterested appraisers to appraise the "full market value" of the stock of the appellant and the other nonconsenting stockholders (whose stock aggregated 166 shares).

The appraisers sought by respondent were appointed by order of the Superior Court, Law Division, filed May 22, 1952. The appraisers' report was filed in the Superior Court, Law Division on June 20, 1952. The respondent moved for confirmation thereof. This motion was resisted by the appellant, but after argument thereon the court entered an order dated June 20, 1952 confirming the appraisers' report. The order recited the fact that there remained outstanding at the time of the order only 35 shares of stock in the nonconsenting category (including appellant's shares), ordered respondent to pay therefor the sum of $80 per share, the

valuation found by the appraisers, and ordered the nonconsenting stockholders to surrender their certificates. The appellant appealed this order to the Superior Court, Appellate Division, but prior to hearing there certification was allowed upon our own motion.

The principal questions involved are: (a) whether the legislation providing for the appraisal procedure invoked in this matter constituted an ·unconstitutional interference with the obligation of appellant's contractual rights emanating from the respondent's charter (*L.* 1831, *p.* 24, *etc., supra*), and (b) whether the appellant's stock was appraised at its "full market value."

The keystone of the appellant's argument is that the Legislature, by the 1831 act under which the respondent was formed, granted the respondent à perpetual charter under and by virtue of which the appellant acquired contractual rights, the obligation of which is inviolable by the Legislature. This argument is premised upon the construction and application of *Article* I, *Section* X, *clause* 1, of the *Constitution of the United States* laid down in *Trustees of Dartmouth College v. Woodward*, 4 *Wheat.* 518, 17 *U. S.* 518, 4 *L. Ed.* 629 (1819). Although there may be authority in support of the appellant's premise, see *New Jersey v. Yard*, 95 *U. S.* 104, 24 *L. Ed.* 352 (1877), there is no occasion in this case for us to reach a determination thereon since we may assume for the purposes of the disposition of this appeal that the appellant's contention in this respect is valid.

Acting upon the assumption that *R. S.* 48:12–15, as amended, *supra,* (which gives the right of appraisal and acquisition of dissenting stockholders' stock to railroad corporations, upon procedures established in *R. S.* 14:12–6, *supra*) constitutes an impairment of the obligation of appellant's contractual rights stemming from *L.* 1831, *p.* 24, *etc., supra,* nevertheless this impairment is a constitutional one and does not deprive appellant of any property or right without due process of law. The situation exhibited by the cited statutes and the record in this case is controlled by the

principles expressed by the former Court of Errors and Appeals in *Black v. Delaware and Raritan Canal Co.*, 24 *N. J. Eq.* 455, 468–473 (*E. & A.* 1873). The following portions of the opinion in the *Black* case, *supra,* merit repetition here:

"In the exercise of the right of eminent domain, the legislature may authorize shares in corporations, and corporate franchises, to be taken for public uses upon just compensation. The title to this species of property is no more secure against invasion when the public uses require it, than is the ownership of real estate. Under this paramount right in the public, subject to which all private property is held, the franchises of one corporation have been, and may be taken and bestowed upon another." (24 *N. J. Eq.* at *pp.* 468–469.)

"* * * There can be no doubt that a railroad company may be empowered to extend their road beyond the point to which it was built under the original grant, if proper compensation is provided for stockholders who may resist it, and I can see no difference in principle, whether the original company, in order to secure a through route under one management, is authorized to take the lands of individuals, or to take the property which individuals have in the stock of an existing road. In the first case, for the purpose of establishing the through route, one kind of private property, to wit, the lands of individuals, is taken by the corporation; in the second case, another kind of property, to wit, the shares of stock of individuals in an existing company, is authorized to be condemned. In the latter instance, the use is as clearly a public use as in the former, and when the legislature declares that it may be done it is no more necessary to declare in the grant that public necessity requires it, than it is essential, in order to validate a railroad charter, that there should be an express announcement by the legislature that it is in aid of public uses. The same rule applies to both cases, unless property in stock can claim a superior right to protection. This, with all other private property, is held under the dominant right of eminent domain." (24 *N. J. Eq.* at *p.* 470.)

The ruling principles of the *Black* case, *supra,* are confirmed by the similar expressions contained in *Offield v. New York, N. H. & H. R. Co.*, 203 *U. S.* 372, 27 *S. Ct.* 72, 51 *L. Ed.* 231, 236–237 (1906). "While the charters of private corporations constitute contracts, a grant of exclusive privilege is not to be implied as against the state. * * * And all contracts are subject to the right of eminent domain. * * *" *Home Building & Loan Ass'n. v. Blaisdell*, 290 *U. S.* 398, 54 *S. Ct.* 231, 239, 78 *L. Ed.* 413, 427 (1934). Authority in other jurisdictions seems almost universally to

support these principles. See annotations, 81 *A. L. R.*, at *pp.* 1071 *et seq.*

Appellant has also questioned the appraisers' finding as to the "full market value" of the respondent's stock. This argument is without merit. The appraisal was effected in accord with the statute and the statutory standard is valid. *Cf. In re Morris Canal and Banking Co.*, 104 *N. J. L.* 526 (*E. & A.* 1928) ; *Prall v. United States Leather Co.*, 6 *N. J. Misc.* 967 (*Sup. Ct.* 1928), affirmed 105 *N. J. L.* 646 (*E. & A.* 1929). The respondent introduced evidence that its stock was consistently quoted on brokers' lists and was traded openly. Although Erie was the sole purchaser over a period of years, sales to Erie were obviously sales made between willing sellers and a willing buyer. And the value ($80) per share found by the appraisers was the value at which Erie purchased several hundred shares, in the course of several market transactions, during the years 1947 through 1951. This was the highest price received for shares of stock of the respondent on the market, as shown in the evidence. Full value has been given by the appraisers under the circumstances of this case, and appellant cannot have more based upon what she conceives to be the fair value of the corporation's assets. *Cf. In re Morris Canal and Banking Co., supra; Prall v. United States Leather Co., supra.* Appellant introduced no evidence to the contrary, *i. e.*, opposed to the value found by the appraisers.

The remaining questions raised on this appeal are unnecessary to be determined in view of our disposition of this case upon the principal questions involved.

For the reasons expressed in this opinion the order of the Superior Court, Law Division, is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.