HAMILTON GAS-LIGHT & COKE CO. *v.* CITY OF HAMILTON.

*(Circuit Court, S. D. Ohio, W. D  January 30, 1889.)*

1. MUNICIPAL CORPORATIONS—GAS COMPANIES—EXCLUSIVE FRANCHISE.
   Rev. St. Ohio, § 2480, provides that, if a gas company neglects for six months to lay pipes and light streets after requirement and notification by the common council of a city or town, the council may erect gas-works for lighting such streets and all other streets not already lighted. Section 2482 provides that neglect by any company to furnish gas to citizens and other consumers, or to the municipal corporation, in accordance with the prices fixed by the council, shall forfeit all rights of the gas company under its charter, and that the council may proceed to erect, or may empower any person to erect, gas-works for the supply of gas to such corporation and to its citizens. Section 2486 confers upon the council a general power, to be exercised whenever deemed expedient and for the public good, to erect gas-works at the expense of the corporation, or to purchase any gas-works already erected in the corporate limits. *Held*, that although a company had erected gas-works in a city by the authority of the city, and had complied with all the requirements of the common council, there was nothing in the above sections which precluded the city from building its own gas-works.

2. SAME—VESTED RIGHTS.
   A company chartered under the laws of Ohio for the manufacture of gas was authorized by a city to erect works, and occupy its streets for the purpose of laying pipes and gas-mains. The city fixed the price of gas, and directed the manner of laying mains, as it had authority to do; and from time to time made contracts with the company for lighting the streets. The last contract made fixed the price of gas for public and private consumption for a period of five years, and required of the company, as a condition precedent, that it should lay pipes for public lighting along streets where for long distances there was no private consumption. *Held*, that as the company did not have the exclusive right to the use of the streets for laying gas-pipes, and the city was under no obligation to purchase gas from the company, no vested rights

of the latter were disturbed when, on the termination of the five-years contract, the city refused to take any more gas of the company, and determined to build its own gas-works.

In Equity. Motion for injunction.

*Thos. Millikin, A. F. Hume, John T. Neilan,* and *John F. Follett,* for complainant.

*E. E. Hull, J. E. Neal, Morey, Andrews & Mooney,* and *Israel Williams,* for defendant.

SAGE, J. This is a motion for a temporary injunction. It appears from the bill that the complainant company was duly incorporated under the general laws of the state of Ohio, and organized in the city of Hamilton in the year 1855 for the purpose of manufacturing and supplying gas for the use of the city and of its inhabitants; and that the city by ordinance granted the use and occupation of its streets, alleys, and public places for the laying of pipes and gas-mains. The complainant accepted the terms and conditions of the grant, and at large cost erected gas-works, provided the necessary machinery and appliances, and laid pipes and mains for the delivery of gas for public and private lighting. The defendant, for more than 30 years, has accepted complainant's services in furnishing gas as aforesaid, has repeatedly exercised its power, conferred by the laws of the state, over the complainant, fixing from time to time the price of gas for public and for private use, appointing gas inspectors, and compelling complainant, under its directions, to lay its mains; and there are at present buried in the streets about 30 miles of gas-mains and pipes so laid, the same extending all over said city, and covering its three and a half square miles of territory, defendant having compelled complainant to lay its mains along streets on which for long distances there are no buildings of any kind, and no private consumption of gas. Complainant further avers that by order of the defendant it has erected upon said streets and connected with said mains 532 public lamp-posts, with lamps, burners, and all other appliances complete, the same being the property of the defendant; that its works are ample to supply all the gas required for public and private use; that it has always complied with every condition and requirement imposed by its charter, or by law, or by the ordinances of the city, or by contract or otherwise, and that it is ready and willing to continue so to do, as it has repeatedly notified the defendant both before and after January 1, 1889. On the 27th day of November, 1883, the city council, by ordinance, fixed the price of gas for public and for private consumption for the period of five years from and after January 1, 1884, the ordinance also providing, as a condition precedent to its taking effect, the laying of certain mains by complainant, which were required exclusively for street lamps along streets, a great portion whereof were without dwellings. The complainant assented in writing to the terms of said ordinance, and during the time that it remained in force laid, under the orders and direction of said city council, about eight miles of street mains as aforesaid. On the 2d of January, 1889, defendant notified complainant that it would no longer

receive or use any of the complainant's gas for any purpose; and that it would not pay for any gas furnished by complainant, nor would it allow or permit complainant to use any of said street lamps for the purpose of lighting the streets and public grounds and places of said city, after the 1st of January, 1889; and further ordered complainant to remove without delay all connections between said mains and said lamps, and ordered and directed its servants and employes to light its public buildings by some means other than by complainant's gas. The bill further avers that the defendant, in furtherance of its purpose to light its streets, public grounds, and public places by other means than by complainant's gas, and intending to destroy complainant's property and investments in its said gas works, mains, and pipes, "so acquired and made under the laws of the state of Ohio, and the ordinances of said city," has already passed an ordinance to issue $150,000 of its bonds to erect gas-works and manufacture its own gas, and lay gas-mains in said streets, including the streets already occupied by complainant's mains, and thereby forever deprive complainant of all right to manufacture and supply gas for said public lighting, and that defendant now threatens to remove, and, unless restrained by the order of this court, will remove and disconnect all said lamp-posts and street lamps from their attachments with complainant's said mains, and provide some other means for temporarily lighting said streets and public grounds until said gas-works can be completed, and then forever deprive complainant of all rights acquired by its charter, and render its said property valueless, by taking away from complainant said public lighting, and also by entering into competition with it for the private consumption of gas. The bill charges that said ordinances and proposed action of the defendant impair the obligation of its contract with the complainant under which complainant's gas-works were constructed, and the investments of complainant's property were made; and that they are contrary to the provisions of section 10, art. 1, of the constitution of the United States, and, if carried into effect, will destroy the value of complainant's property, and convert the same to the use of the defendant without due process of law, and in violation of the provisions of the fourteenth amendment of the constitution of the United States. Finally, the bill charges that no provision has been made by defendant for compensation to complainant for its property so proposed to be taken and appropriated for public use, and that, if said ordinances are permitted to be carried into effect, said property will be taken and appropriated to public use without compensation to complainant, in violation of the provision of the constitution of the United States.

The defendant, admitting the main facts stated in the bill, presents by affidavits copies of the contracts made in pursuance thereof, from time to time, by and between the city and the complainants, fixing the price of gas to private consumers, and the terms and conditions of public lighting, and also of the orders and provisions for laying street mains. There is no controversy upon any material fact, nor is there any claim that the complainant has at any time been in default, or failed or refused to perform its contracts, or the orders of the city council. The defendant ad-

mits that it has refused to receive or pay for gas for the use of the city or for the lighting of its streets from and after January 1, 1889, and that it intends to build and operate gas-works of its own to the exclusion of the complainant from any public lighting, and it avows that it has no intention to buy or use any of the mains, pipes, or property of the complainant.

The defendant further denies the jurisdiction of this court, contending that it has the right and the power to do what it proposes to do, and that the acts complained of do not impair any vested rights of the complainant, nor amount to an appropriation or deprivation of its property. If the defendant is right in this its contention, no federal question is involved, and this court has no jurisdiction. But the statement of the defendant's propositions makes it clear that the question of jurisdiction is so intimately connected with the merits that the two must be considered together. The complainant was organized under a general law subject to amendment or repeal; the constitution of Ohio forbidding the passage of special acts conferring corporate powers, and providing that corporations may be formed under general laws, which may from time to time be altered or repealed. These constitutional provisions by no means operate to prevent the acquisition of vested rights, nor do they authorize the impairment of those rights when once granted. There is no substantial difference in this regard between a corporation chartered or organized under general laws and subject to the constitutional provisions above quoted, and corporations organized under the old constitution, and under special charters, which reserved to the legislature the right of amendment or repeal. Vested rights are as secure in the one case as in the other; the material difference between the two being that under the new system the right and privilege to be incorporated is open to all, whereas under the old system it was limited or might be limited to a favored few. The provisions of law in force when the complainant company was organized have been substantially carried forward into subsequent acts, and they are to be found, without material change, in the Revised Statutes of Ohio, in the chapter relating to gas companies, beginning at section 2478, and in the chapter providing for lighting corporations, beginning at section 2492.

The three sections upon which the questions decisive of this case arise are:

*First.* Section 2480, which provides that if gas companies refuse or neglect for six months to lay pipes and light streets, alleys, or public grounds, after requirement and notification by the council, the council may lay pipes and erect gas-works for lighting such streets, alleys, or public grounds, and all other streets, alleys, and public grounds not already lighted; and such companies shall thereafter be precluded from using or occupying any of the streets, alleys, public grounds, or buildings not already furnished with gas pipes of such companies.

*Second.* Section 2482 enacts that a neglect to furnish gas to the citizens and other consumers of gas, or to the corporation, by any company, in accordance with the prices fixed by the council, shall forfeit all rights of the gas company under its charter, and that the council may proceed to

erect, or by ordinance empower any person to erect, gas-works for the supply of gas to such corporation and to its citizens, provided that nothing in this section or in section 2480 shall operate to impair any contract "heretofore" made between the municipal corporation and the gas company.

*Third.* Section 2486 provides that the council of any city or village shall have power, whenever it may be deemed expedient and for the public good, to erect gas-works at the expense of the corporation, or to purchase any gas-works already erected therein.

Now it is claimed that section 2480, by application of the maxim *expressio unius, exclusio alterius*, limits the power of the city to erect gas-works and lay pipes in the streets to the conditions expressed in the section. We are of opinion that the true construction of this section is that it states the only conditions, excepting those stated in section 2482, under which the city may erect gas-works and lay pipes for lighting streets, to the exclusion from those streets of a gas company already in operation and having its pipes laid in other streets. It is to be noted that under this section the city is empowered to lay pipes in those streets and public places only which are not already lighted. Upon the failure or neglect for six months to furnish gas to the city and to provide consumers, the gas company, under section 2482, forfeits all its corporate franchises and rights, and the city is authorized either to erect gas-works and supply gas to the entire city, and to all consumers, or to empower any person so to do. Section 2486 confers upon the city council a general power, to be exercised whenever deemed expedient and for the public good, to erect gas-works at the expense of the corporation, or to purchase any gas-works already erected therein. This section was not enacted until after the complainant had built its works and entered upon the business of furnishing gas as aforesaid. The proposition that it confers only alternative power, so that its true construction is that the city may erect gas-works if there be no gas company already established and in operation, and that, if there be such a gas company, the city has no power to erect works excepting as provided in sections 2480 and 2482, but is limited to the authority to purchase the gas-works already erected therein, is not sound. The true construction is too clearly indicated by the language of the section to be misunderstood. It means exactly what it says, that the city may either build or buy; and the city of Hamilton in this case is not precluded from building by the fact that it has authorized the complainant company to erect gas-works, and lay its pipes in the streets of the city, and that the company has not made itself liable to forfeiture under section 2480 or section 2482.

Now, the complainant contends that, upon this construction, section 2486 is in conflict with the constitution of the United States, because it interferes with its vested rights, and impairs its property, by diminishing, if not destroying, its value, and in effect appropriating it to public use without making compensation. The specifications of this charge have already been stated as set forth in the bill. To clearly understand the matter certain propositions must be taken into account.

1. The complainant never had an exclusive right to the use of the streets of the city of Hamilton, for laying pipes for conveying gas. That was settled by *State* v. *Coke Co.*, 18 Ohio St. 262. Section 2485, Revised Statutes of Ohio, which in terms prohibits the grant to any gas company of an exclusive privilege to use the streets, alleys, and public places of the municipality for gas purposes, was enacted subsequent to the incorporation of the complainant; but the decision in 18 Ohio St. was based upon the law in force when the complainant was organized, and granted the use of the streets by the defendant. The city might therefore at any time have authorized the use of the streets for that purpose by another and competing company.

2. The city, when it notified the complainant, on January 2, 1889, to sever the connections between its mains and the street lamps, which are the property of the city, and that it would no longer receive or pay for gas from the complainant, had no contractual relations with the complainant. The contract of January 1, 1884, for five years, had expired by its own limitation. The city had, from time to time, made gas contracts with the complainant, as it had authority to do. But it must be remembered that the power to make a contract necessarily implies and includes the power to refuse to make a contract, and the city had therefore the right to refuse to further contract with the defendant.

3. There is nowhere in any statute, and there has not been, any provision requiring the city to take gas from the complainant any more than there is or has been any provision requiring any citizen to take gas. Will it be for a moment contended that the complainant could maintain a suit for an injunction to restrain a citizen from refusing to take gas from it, or using coal oil or gasoline, or putting up his own gas-works, on his own premises, on the ground that the chartered rights of the complainant were thereby invaded, and the constitution of the United States violated? Would not the citizen, in such case, be entitled to at least suggest that he too had constitutional rights to be protected?

4. Inasmuch as the city has the right to permit the use of its streets by another gas company, and has also the right to purchase any gas-works erected within its limits, what is the difference in a legal or constitutional view, or so far as any impairment of the vested rights or property of the complainant is concerned, between its permitting another gas company to erect its works and lay its pipes in the streets, and then purchasing those works and pipes for the purpose of itself manufacturing and selling gas, and itself in the first instance erecting gas-works, and operating them?

5. The fact that the complainant, while the contract of January 1, 1884, was in force, laid about eight miles of pipe, under orders from the city council, for lighting streets along which there were very few dwellings or buildings, and in many places, for considerable distances, none at all, and that the loss of the street lighting will leave those pipes buried in the ground, unused, and comparatively valueless, while it indicates a great hardship, and we may admit also, for the sake of the argument, a great injustice, it does not raise a constitutional question, or give

this court jurisdiction; for, by the force of the propositions above stated, although the complainant was compelled under penalty of forfeiture to lay those pipes, it was compelled also to take the risk, which has ripened into certainty, that the city at the expiration of the contract would refuse to renew it upon any terms, and would erect its own works.

6. If, as we have found, the city has the right in its discretion to erect gas-works, it necessarily follows that it has the right to levy taxes to meet the expense, and that the complainant's property within the city will be, precisely as all other property, subject to that taxation.

7. The authorities cited by complainant are not in conflict with the above propositions. In *Gas Co.* v. *Louisiana, etc., Co.*, 115 U. S. 650, 6 Sup. Ct. Rep. 252, the gas company was incorporated with the exclusive privilege of making and selling gas in New Orleans, and its *faubourgs*, and in Lafayette, for a term of years, and this exclusive privilege was the basis of the decision. In *Greenwood* v. *Freight Co.*, 105 U. S. 13, the charter of the street-railroad company was special, and without any reservation of the right of repeal, and it was held that a repeal and attempted transfer of the company's franchises and track to another impaired the obligation of the contract with the company. In *New Jersey* v. *Yard*, 95 U. S. 104, it was held that the right to alter, amend, or repeal was not reserved. In *Water-Works Co.* v. *Rivers*, 115 U. S. 674, 6 Sup. Ct. Rep. 273, the company had by legislative grant, an exclusive right to supply water to the municipality; and such was also the fact in *Gas Co.* v. *Gas Co.*, 115 U. S. 683, 6 Sup. Ct. Rep. 265. In *Seibert* v. *Lewis*, 122 U. S. 284, 7 Sup. Ct. Rep. 1190, the holding that "the remedy subsisting in a state when and where a contract is made and is to be performed is a part of its obligation, and that any subsequent law of the state, which so affects that remedy as substantially to impair and lessen the value of the contract, is forbidden by the constitution, and is therefore void," does not affect this case for the reason that here no contract is violated. The right of complainant to furnish gas to citizens and other private consumers is not attacked nor threatened. All that is done is the refusal of the city to contract for or receive or pay for gas for its own use, and the declaration of its intention to erect works and enter into competition with the complainant for the supply of gas for private consumption, and each of these things it has a right to do. In *Water-Works Co.* v. *Atlantic City*, 6 Atl. Rep. 24, the city had exhausted its power as to providing a water supply, and the complainant's franchise was exclusive. In the *Binghamton Bridge Case*, 3 Wall. 51, the company was granted the franchise to build a bridge across a river in New York, and the charter provided that it should be unlawful for any one to erect a bridge or establish a ferry within a distance of two miles on that river. In this case there is no exclusive grant to the complainant, and no obligation imposed upon the defendant to buy the complainant's gas. Moreover, the complainant was always liable to competition. The circuit judge concurs in the opinion that no federal question is involved in this cause, and that this court has therefore no jurisdiction. The motion for a temporary injunction is overruled, and the bill dismissed.