COLLECTOR OF TAXES OF BOSTON *vs.* THE NATIONAL SHAWMUT BANK OF BOSTON.

Suffolk.  November 30, December 1, 1926. — March 12, 1927.

*National Bank*, Taxation.  *Statute*, Construction.  *Constitutional Law.*

St. 1924, c. 233, approved April 12, 1924, since it did not contain a provision to the effect that an election filed by a national bank on or before March 15, 1924, under § 10A, added to G. L. c. 63 by St. 1923, c. 487,

§ 2, should be inoperative, did not obliterate rights of a bank which had filed such an election before March 15, 1924, nor, upon a bank's not making the election specified in St. 1924, c. 233, § 2, within fifteen days after the passage of that statute, authorize an assessment upon its shares under G. L. c. 63, § 1.

CONTRACT for a tax assessed upon the defendant under G. L. c. 63, § 1. Writ dated June 9, 1925.

The plaintiff demurred to an amended answer of the defendant. Facts admitted and questions of law thus raised are stated in the opinion. The demurrer was heard by *Cox,* J., who ordered it sustained, and, the defendant appealing from that order, reported the action to this court for determination before further proceedings in the Superior Court.

*T. Hunt,* for the defendant.

*W. H. Hitchcock,* (*J. A. Sullivan* with him,) for the plaintiff.

RUGG, C.J. This is an action of contract brought under the authority of G. L. c. 63, § 2, by the collector of taxes of the city of Boston to recover a tax assessed for 1924 upon the shares of stock in the defendant bank under G. L. c. 63, § 1. The answer admits all the allegations of fact of the declaration and then avers that the assessment was invalid for several reasons, one being that the bank had duly made election to be taxed for the year 1924 under § 10A, inserted in G. L. c. 63 by St. 1923, c. 487, § 2, and that the assessors had therefore no authority to assess a tax on its shares under G. L. c. 63, § 1, and that St. 1924, c. 233, did not affect the rights of the bank under its election, nor apply to the taxation of the bank for the year 1924.

It becomes necessary to make a somewhat critical examination of the terms of St. 1923, c. 487, in the light of the preëxisting statutes. It is entitled, "An Act providing an alternative method of taxation of national banks and providing for the settlement of certain existing tax claims of such banks." It was enacted as an emergency law under art. 48 of the Amendments to the Constitution, "The Referendum. II. Emergency Measures." The preamble recites that "It is urgent that immediate provision be made for the settlement of existing controversies relative to the taxation

of national bank shares and for the establishment of a suitable basis on which to assess taxes on national banks in the future." Section 1 reënacts in the same words G. L. c. 63, § 1, except (1) that a slight change and addition were made in order to conform to the words of the act of Congress of March 4, 1923, c. 267, 42 U. S. Sts. at Large, 1499, amending U. S. Rev. Sts. § 5219, and (2) that there was added this sentence: "In lieu of the foregoing tax any such bank may, however, elect to be taxed upon its net income as provided in section ten A." By § 2 of said c. 487, two new sections, § 10A and § 10B, are added to G. L. c. 63, by insertion after § 10. In § 10A an assessment is established on the shares of all banks, which elect to be so taxed, of a fixed percentage upon their net income as there defined. The method whereby banks manifest in each year their election to be taxed under § 10A is to file with the commissioner of corporations and taxation "notice of such election, in such form as he shall prescribe, on or before the fifteenth day of March of the year in which the assessment is to be made." Such commissioner is required as soon as may be to notify the assessors of the municipality where such bank is located of such election. It is declared that, when such election has been made and notification thereof given by the commissioner, "the local assessors shall make no assessment upon the shares of such bank in that year; and no such bank shall be liable to taxation under section fifty-eight" of G. L. c. 63. By § 10B, provision is made for the distribution of the revenue thus collected under § 10A. By § 3 of said c. 487, amendment is made to the income tax law so as to exempt from the income tax dividends on stock of national banks paying the tax prescribed by said § 10A. By § 4 of said c. 487 it is provided that any bank which within a specified time shall file "a waiver . . . of any claim which it may have for the abatement or recovery of such part of the taxes assessed and paid upon its shares for the years nineteen hundred and twenty-one and nineteen hundred and twenty-two as exceeds one third of such taxes, and shall present a certificate of abatement or judgment approved by the Attorney General and the said commissioner, shall be paid out of the treasury of the

Commonwealth a sum equal to one third of such taxes upon complying with the foregoing conditions," and a specified sum was to be paid to a named national bank in full settlement of all claims for abatement of taxes assessed upon its shares of stock for the years 1917 to 1920, both inclusive. Provision is made in § 5 of said c. 487, for the effective date and application of the first five sections of the act, and in § 6 for appropriating $3,000,000 for the refunds and for raising the money necessary therefor: by § 7 the act is to take effect on its passage.

It is manifest from this analysis of said c. 487 that there was much controversy and considerable litigation concerning the validity of taxes assessed upon shares of stock in national banks under G. L. c. 63, § 1, and that large sums of money were involved. From the facts revealed in *Central National Bank* v. *Lynn, ante,* 1, decided this day, and from *National Rockland Bank* v. *Boston,* and seventeen other cases, 296 Fed. Rep. 743, *Fourth Atlantic National Bank* v. *Boston,* 300 Fed. Rep. 29, and *National Shawmut Bank* v. *Boston,* 7 Fed. Rep. (2d.) 1020, it can readily be seen that the matter was one of great importance to all the parties concerned. One plain purpose of said c. 487 was to compose strife and settle litigation in which the public treasury was considerably involved. This statute, like all others, must be construed and interpreted in the light of the preëxisting law, the mischief to be remedied, and the object to be accomplished, in order to effectuate so far as practicable the legislative design in enacting it. *Duggan* v. *Bay State Street Railway,* 230 Mass. 370, 374.

The defendant bank duly made election to be taxed in accordance with said § 10A, by filing notice thereof in the prescribed form with the commissioner on or before March 15, 1924. This was the second calendar year of the operation of said § 10A. At that time § 10A, added to G. L. c. 63 by St. 1923, c. 487, § 2, controlled. The plaintiff contends that this election was nullified by the enactment of St. 1924, c. 233. That act was approved on April 12, 1924. By its § 1 said § 10A was amended by inserting a minimum provision as to the tax on national banks, to the effect that "in

no event shall said tax be less in amount than would be obtained by a tax at six per cent on the dividends paid during the taxable year hereafter mentioned." The words of § 2 are: "This act shall be effective as of April first in the current year and shall also apply to the assessment of taxes in that year; provided, that a notice of election to be taxed in the current year under section ten A of chapter sixty-three of the General Laws, as amended by section one hereof, is filed thereunder with the commissioner of corporations and taxation on or before the expiration of fifteen days after the passage of this act."

The election of the defendant to be taxed under said § 10A, as phrased in St. 1923, c. 487, when filed on or before March 15, 1924, became under the statutes as they then stood of full force and effect. "In lieu of the" tax subsequently assessed under G. L. c. 63, § 1, and here sought to be recovered, the defendant became entitled by its election to be taxed under said § 10A. It then was the duty of the commissioner at once to notify the assessors of Boston of that election, whereupon the statutory mandate was operative that the local assessors shall make no assessment upon the shares of stock of the defendant "in that year."

The right of the defendant to be thus taxed arising from its election duly made and manifested was not obliterated by the enactment of St. 1924, c. 233. The only permanent and new provision added thereby to the tax law was the one imposing a minimum tax. In every other particular said § 10A as originally enacted was left unchanged. The provision of § 2 of said c. 233 has reasonable scope if held applicable to the effective date and application of the minimum tax provision. There are not to be found in said c. 233 any words to the effect that all elections filed on or before March 15, 1924, shall be inoperative. Such a provision would have annulled all such elections filed by banks not to be affected by the minimum tax clause. There was no necessity as a practical matter for requiring a new election by such banks. It would be difficult to hold that elections filed on or before March 15, 1924, by banks not affected by the minimum tax clause were annulled by said c. 233, and that shares of stock

in such banks must be taxed according to the method pre-scribed by G. L. c. 63, § 1, notwithstanding such election, unless a new election were filed pursuant to the terms of said c. 233. That act hardly admits the construction that banks which would be affected by the minimum tax clause should be held (by the election filed on or before March 15, 1924, to be taxed in accordance with the § 10A then in force) to be subject to the minimum tax without a new election. No such tax is claimed in this action. Said c. 233 contains no express provision concerning those banks which had filed their elections on or before March 15, 1924, and had ac-quired the right to be taxed under the law then in force. The contention of the plaintiff in substance is that national banks not electing to be taxed under the minimum tax clause shall be subject to the tax on the fair cash value of the shares, notwithstanding their election to be otherwise taxed under a law valid at the time the election was filed. The words of § 2 of said c. 233 mean, in view of all the circumstances, that the amendment is applicable to 1924 taxes only in the event that an election is filed under the terms of said § 2. It does not affect, modify or invalidate an election filed as was that of this defendant.

This interpretation of the force and effect of St. 1924, c. 233, is confirmed by another important consideration. A construction of said c. 233, in accordance with the con-tention of the plaintiff, holding it to render void the election of the defendant to be taxed under said § 10A in its initial form, would raise grave doubts of its constitutionality, as impairing the obligation of contracts. The argument is strong that, in the light of the terms of St. 1923, c. 487, the controversies designed thereby to be laid at rest, and the alternative option thereby presented to the national banks for their selection each year, the legislative purpose was to place a contractual sanction upon elections by the banks filed according to its terms, at least to the extent of not attempting to impose a tax on the shares of national banks under G. L. c. 63, § 1, in direct contravention of an election made according to the terms of said c. 487. *New Jersey* v. *Wilson,* 7 Cranch, 16. *New Jersey* v. *Yard,* 95 U. S. 104.

The laws of taxation may be changed.    In the absence of some binding contract, no one has a vested right to the continuance of such laws in any particular form.    *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 8.    *Massachusetts General Hospital* ·v. *Belmont*, 233 Mass. 190, 200. A contract limiting the power to tax will not be implied in the absence of firm indication of legislative purpose.    *Phoenix Fire & Marine Ins. Co.* v. *Tennessee*, 161 U. S. 174.    *Covington* v. *Kentucky*, 173 U. S. 231.    But St. 1923, c. 487, as has already been pointed out and as appears from its terms, was enacted to accomplish somewhat extraordinary ends.

It is an established canon of constitutional law that statutes, where reasonably possible, shall be interpreted so as not to render them contrary to the terms of the Constitution, and also so as to avoid grave doubts on that score. *Kennedy* v. *Commissioner of Corporations & Taxation*, 256 *Mass.* 426, 430, 431, and cases there collected.    *Bratton* v. *Chandler*, 260 U. S. 110, 114.    *Thurman* v. *Chicago, Milwaukee & St. Paul Railway*, 254 Mass. 569, 576.    *Hanscom* v. *Malden & Melrose Gas Light Co.*, *supra*, page 5.

The result is that the demurrer to the answer ought to be overruled because the answer states a good defence.    In accordance with the stipulation of the plaintiff and the terms of the report, judgment is to be entered for the defendant.

*So ordered.*