COMMONWEALTH *vs.* S. S. KRESGE COMPANY.

Suffolk.    April 1, 1929. — May 27, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Optometry. Statute*, Construction. *Constitutional Law*, Police power, Equal protection of law, Regulation of optometry.

The scope and purpose of G. L. c. 112, §§ 66–73, to promote the public health by regulating the treatment of individuals with eyeglasses for alleviation of the consequences of impaired vision, were not enlarged nor altered by the provisions of St. 1926, c. 321; and §§ 72, 73, as amended by §§ 2, 3, of said c. 321, are constitutional.

At the trial of an indictment against a corporation engaged in the sale of general merchandise in a department store, charging in four counts that the defendant held itself out as a practitioner of optometry, practised optometry, attempted to practise optometry and sold eyeglasses for the purpose of correcting defective vision in violation of G. L. c. 112, §§ 66–73, as amended by St. 1926, c. 321, it appeared that the defendant displayed in show cases sundry kinds of eyeglasses and also displayed cards printed with various sizes of type, each size designated by a number corresponding to a number appearing on one of the kinds of eyeglasses; and that customers were advised to read the

several sizes of type until they reached one too small for them to read, whereupon the defendant's employee selected the eyeglasses with the corresponding number, which the customers bought without further inquiry or suggestion if, by looking at that size of type through such eyeglasses, they found them satisfactory. It did not appear that either the defendant or any of its employees was registered to practise optometry under the provisions of said statute. *Held*, that a finding of guilty was warranted on each count of the indictment.

INDICTMENT, found and returned on February 13, 1928.

The defendant waived in writing its right to trial by the jury, and the indictment was heard upon an agreed statement of facts by *Fosdick*, J., without a jury. The indictment and material facts are described in the opinion. It did not appear in such agreed statement of facts that either the defendant or any of its employees was registered to practise optometry under G. L. c. 112, §§ 68, *et seq.*, as amended by St. 1926, c. 321. The defendant was found guilty on each count of the indictment and alleged exceptions.

*H. Parker*, (*H. W. Conant* with him,) for the defendant.

*C. F. Lovejoy*, Assistant Attorney General, for the Commonwealth.

RUGG, C.J. The several counts in the indictment charged that the defendant, not being lawfully authorized to practise optometry, (1) held itself out as a practitioner of optometry, (2) practised optometry, (3) attempted to practise optometry, and (4) sold eyeglasses for the purpose of correcting defective vision. Trial by jury was waived and the case submitted on an agreed statement of facts. These in substance are that the defendant for many years and at the time alleged maintained in Boston a place of business where it engaged in the sale and distribution of general merchandise according to the department store method, and where it also sold eyeglasses under these conditions: Divers types and kinds of eyeglasses were displayed on or within show cases and accessible to all; nearby such show cases and intended for the use of prospective purchasers were cards containing words and phrases printed in various sizes of type, each different size designated by a number, which number also appeared upon the eyeglasses, so that customers could make

examination of the eyeglasses designed to fit particular defects in vision. On their inquiry or request respecting said card, customers were advised to read the several paragraphs on the card, until they reached a type so small that they could not read it, and then to indicate to the defendant's employee, the number or numbers appearing opposite said type on said cards. The employee of the defendant, at the request of the customer, picked out from its stock in the show case, eyeglasses bearing numbers corresponding to such number or numbers appearing on the card, and indicated by the customer, and if, by looking at the type so indicated, through such spectacles, customers found them satisfactory, they were purchased of the defendant's agents, without any further inquiry or suggestion, and so such glasses were sold by the defendant to such purchaser. Thus the defendant sold spectacles and eyeglasses designed to fit varying defects of vision disclosed by inability to read the type of differing sizes arranged on the card.

The indictment is based upon G. L. c. 112, § 72, as amended by St. 1926, c. 321, § 2. Its pertinent words are: "Whoever, not being lawfully authorized to practice optometry, holds himself out as a practitioner of optometry, or practices or attempts to practice optometry, or sells or attempts to sell spectacles, eyeglasses or lenses for the purpose of correcting defective vision, . . . or violates any other provision of sections sixty-six to seventy-three, inclusive, shall be punished . . . ." The practice of optometry is defined by G. L. c. 112, § 66, to be "the employment of any method or means other than the use of drugs for the measurement of the powers of vision and the adaptation of lenses for the aid thereof." It further is provided by G. L. c. 112, § 73, as amended by St. 1926, c. 321, § 3: "The seven preceding sections shall not apply to physicians and surgeons lawfully entitled to practice medicine in the Commonwealth, or to persons who neither practice nor profess to practice optometry, but who sell spectacles, eyeglasses or lenses, either on prescription from such physicians or surgeons, or from optometrists authorized to practice in the Commonwealth, or as merchandise from permanently located and established

places of business when not sold for the purpose of correcting defective vision . . . ."

The guiding principle for the interpretation of a statute is that it must be construed, if reasonably possible, so as to effectuate the purpose of the framers, ascertained from its several parts and the meaning fairly attributable to all its words, considered in connection with the cause of its enactment, the subject to which it is applicable, the preëxisting state of the common and statutory law, the mischief to be remedied and the object to be accomplished. It must be interpreted as enacted. Its omissions cannot be supplied and its excrescences cannot be cut out by the judicial department of government. The court can only interpret according to the common and approved usages of the language the words used, without enlargement or restriction and without regard to its own conceptions of expediency. Every rational presumption will be indulged in favor of the validity of an act of the legislative department of government and the court will not refuse enforcement unless its conflict with the Constitution is established beyond reasonable doubt. Where practicable, a statute must be so interpreted as not to render it contrary to the terms of the Constitution and also to avoid grave doubts on that score. *Perkins* v. *Westwood*, 226 Mass. 268, 271, and cases there collected. *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 374. *See* v. *Building Commissioner of Springfield*, 246 Mass. 340, 343. *Thacher* v. *Secretary of the Commonwealth*, 250 Mass. 188, 190. *Arruda* v. *Director General of Railroads*, 251 Mass. 255, 263. *Morse* v. *Boston*, 253 Mass. 247, 252. *Bouchard* v. *First People's Trust*, 253 Mass. 351, 362. *Thurman* v. *Chicago, Milwaukee & St. Paul Railway*, 254 Mass. 569. *Kennedy* v. *Commissioner of Corporations & Taxation*, 256 Mass. 426, 430. *Collector of Taxes of Boston* v. *National Shawmut Bank*, 259 Mass. 14, 20. It is clear that "amendment may not be substituted for construction, and that a court may not exercise legislative functions to save the law from conflict with constitutional limitation." *Yu Cong Eng* v. *Trinidad*, 271 U. S. 500, 518.

The main intent of the Legislature in enacting the statute

here assailed was to preserve and promote the public health. The original statute on which the sections already quoted were founded was St. 1912, c. 700. That statute was declared constitutional in *Commonwealth* v. *Houtenbrink,* 235 Mass. 320. The ground of that decision was that the statute was designed and had a rational tendency to promote and preserve the public health and was a valid exercise of the police power. That statute was amended by St. 1920, c. 512, and these provisions were embodied in G. L. c. 112, §§ 66 to 73, both inclusive. We do not understand that the validity of those sections is now assailed. The contention is that said §§ 72 and 73 have been converted into unconstitutional enactments by the amendments of St. 1926, c. 321, §§ 2 and 3. The change wrought in § 72 by the amendment in said § 2 was to strike out the words "attempts to determine by an examination of the eyes the kind of glasses needed by any person," and to insert in place thereof the words "sells or attempts to sell spectacles, eyeglasses or lenses for the purpose of correcting defective vision." The change wrought in said § 73 by said § 3 was to add, in a section exempting from the operation of the seven preceding sections, among others, those persons not optometrists who sell spectacles, eyeglasses and lenses as merchandise from permanent places of business, the condition or limitation "when not sold for the purpose of correcting defective vision."

It is plain that §§ 66 to 72 of G. L. c. 112, both inclusive, were intended in the main to regulate and to govern the treatment of the individual with eyeglasses for alleviation of the consequences of impaired vision. That is apparent both from a general survey of all the sections as a group and from a detailed examination of each section by itself. The protection of the individual from the effects of treatment for eyes by the ignorant and unskilled was the end sought to be accomplished. No change in this main legislative intent is disclosed by the amendments of 1926. The substitution, for the prohibition against examination of the eyes in an attempt to determine the kind of eyeglasses needed by a particular individual, of a prohibition against selling eyeglasses for the purpose of correcting defective vision, is not a change

or an enlargement of the sweep of the prohibition to a different subject matter. It simply establishes a different standard to determine the existence of a crude and unscientific meddling with the organs of vision. It still deals with the sale to the individual of eyeglasses designed to correct his particular defects of vision. The insertion of the same words in the exemptions of § 73, so that sales of spectacles, eyeglasses and lenses by merchants in established places of business are not prohibited except when sold "for the purpose of correcting defective vision," has the same scope, namely, when sold to the individual for the purpose of correcting his particular shortcomings in eyesight. These sections have no application to sales to the trade by manufacturers, or by jobbers, or by one merchant to another. They have no application to sales at either wholesale or retail of colored eyeglasses or of spectacles made of plain glass, not designed to correct defects in vision but to protect the eye from dust, wind, storm, the glare of the sun, or kindred exposure. Manifestly they have no relevancy to sales of telescopes or microscopes or of lenses therefor.

It seems to us not open to serious debate that it is within legislative competence to determine that scientific and trained adjustment of eyeglasses and of the lenses of which they are made, to the particular organs of vision of each individual, will be likely to effect a more complete and healthful correction of poor eyesight than the untrained and unaided selection by the customer himself from a mass of eyeglasses. We do not understand that that argument has been urged in behalf of the defendant. The chief contention is that the statute as now framed by the amendments of 1926 constitutes an unwarrantable interference with the private business of the defendant. As we interpret the statute, it is directed to the untrained and unscientific treatment of the eye of the individual customer. The defendant cannot complain that its business is injured by the exercise of the police power for the benefit of the public health. *Lawrence* v. *Board of Registration in Medicine,* 239 Mass. 424. *Graves* v. *Minnesota,* 272 U. S. 425.

The defendant relies to a considerable extent upon *Louis*

*K. Liggett Co.* v. *Baldridge,* 278 U. S. 105. We accept without qualification or reservation the law as there declared at pages 111 and 113: "That appellant's business is a property right, *Duplex Co.* v. *Deering,* 254 U. S. 443, 465; *Truax* v. *Corrigan,* 257 U. S. 312, 327, and as such entitled to protection against State legislation in contravention of the Federal Constitution, is, of course, clear. That a corporation is a 'person' within the meaning of the due process and equal protection clauses of the Fourteenth Amendment, and that a foreign corporation permitted to do business in a State may not be subjected to State statutes in conflict with the Federal Constitution, is equally well settled. *Kentucky Co.* v. *Paramount Exch.* 262 U. S. 544, 550; *Power Co.* v. *Saunders,* 274 U. S. 490, 493, 496–497; *Frost Trucking Co.* v. *R. R. Comm'n,* 271 U. S. 583, 594 *et seq.* And, unless justified as a valid exercise of the police power, the act assailed must be declared unconstitutional because the enforcement thereof will deprive appellant of its property without due process of law. The act is sought to be sustained specifically upon the ground that it is reasonably calculated to promote the public health; and the determination we are called upon to make is whether the act has a real and substantial relation to that end or is a clear and arbitrary invasion of appellant's property rights guaranteed by the Constitution. See *Adair* v. *United States,* 208 U. S. 161, 173–174; *Mugler* v. *Kansas,* 123 U. S. 623, 661. The police power may be exerted in the form of State legislation where otherwise the effect may be to invade rights guaranteed by the Fourteenth Amendment only when such legislation bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare. . . . A State cannot, 'under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them.'"

It seems to us that the statute here in question conforms to every requirement for validity thus laid down and is not obnoxious to any one of them. The defendant is undertaking to invade under the guise of private mercantile business

a field rightly sequestered, by the Legislature in the interests of the public health, to those possessing special skill and training in a specified department of treatment of human ills. This statute is not open to the defects found to be fatal in the one under examination in the Liggett case. The sections of the statute here under review appear to us to be a reasonable effort to accomplish an improvement in the general health of the community with respect to organs of vision. They do not violate any provision of the Fourteenth Amendment of the Federal Constitution. They fall within the protecting authority of *McNaughton* v. *Johnson*, 242 U. S. 344, and *Commonwealth* v. *Houtenbrink*, 235 Mass. 320, and the cases there collected. To the same general effect is *S. S. Kresge Co.* v. *Ottinger*, 29 Fed. Rep. (2d) 762, affirmed, 279 U. S. 337, *sub nomine S. S. Kresge Co.* v. *Ward*, on April 22, 1929.

The meaning of the several sections of the statute assailed being what has already been outlined, it is not necessary to examine in detail the various requests for rulings which were denied or granted with modifications or the rulings to which exceptions were taken. The defendant fails to show any harmful error.

It follows from what has been said that there was no error of law in the finding on the agreed facts that the defendant was guilty on each of the four counts of the indictment.

*Exceptions overruled.*