*Municipal Court of the
City of Boston*
No. 295098

**NAOMI CHIPMAN**

**v.**

**MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY**

Argued: Jan. 26, 1973 - Decided: Apr. 18, 1973

*Present:* Lewiton, C.J., Morrissey, Glynn, JJ.
Case tried to *DeGuglielmo, J.*

**Lewiton, C.J.** The plaintiff, a passenger on a bus of the defendant Massachusetts Bay Transportation Authority (MBTA), was injured when the operator closed the door on her as she was boarding the bus. In this action, she sought to recover from the defendant under Count 1 for breach of agreement to

provide safe transportation for her, and under Count 2 for the negligence of the operator, which caused her injuries. The defendant's answer set up a general denial and contributory negligence, and a special answer "that under the provisions of St. 1970, c. 670, the plaintiff is not entitled to recover damages from the defendant for pain and suffering . . . ."

**At the trial there was evidence that** as a result of the injuries sued on, the plaintiff incurred medical expenses of $50.00, and was totally incapacitated for a period of two weeks, and partially incapacitated for two months more. "Her vocation at the time of the accident was that of a housewife." At the close of the trial, the defendant filed several requests for rulings, all of which were denied, and the trial judge found for the plaintiff in the amount of $1,250.00 on each count. The defendant claiming to be aggrieved by the denial of the requested rulings, they were reported to us for review. During oral arguments before us, the defendant waived all of its requests for rulings other than the following:

"5.    As a matter of law, under Chapter 670 of the acts of 1970 Section 5 amending MGLA Chapter 231 by inserting Section 6D and effective January 1, 1971, if the plaintiff prevails, the plaintiff is not entitled to recovery for pain and suffering because the plaintiff's action of tort arises out of ownership, opera-

tion, maintenance, or use of a motor vehicle within this Commonwealth and her medical expenses are not in excess of $500 and her injuries do not involve a fracture, loss of body member, loss of sight, or loss of hearing, serious disfigurement, or death.

. "6. As a matter of law, under Chapter 670, Acts of 1970, if the plaintiff should prevail, the plaintiff's damages are limited to recovery of actual necessary medical expenses and loss of wages or in the case of persons not employed, loss of diminution of earning power.

"7. There can be no liability in contract if none exists in tort. 235 Mass. 66."

The defendant relies on G.L. c. 231, §6D (hereinafter referred to as "Section 6D"), enacted in St. 1970, c. 670, § 5, which reads as follows:

"In any action of tort brought as a result of bodily injury, sickness or disease, arising out of the ownership, operation, maintenance or use of a motor vehicle within this commonwealth by the defendant, a plaintiff may recover damages for pain and suffering, including mental suffering associated with such injury, sickness or disease, only if the reasonable and necessary expenses incurred in treating such injury, sickness or disease for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral expenses are determined to be in

excess of five hundred dollars unless such injury, sickness or disease (1) causes death, or (2) consists in whole or in part of loss of a body member, or (3) consists in whole or in part of permanent and serious disfigurement, or (4) results in such loss of sight or hearing as is described in paragraphs (a), (b), (c), (d), (e), (f) and (g) of section thirty-six of chapter one hundred and fifty-two or (5) consists of a fracture.''

We first consider the correctness of the trial judge's rulings as applied to the contract count (Count 1). It seems obvious that §6D, which by its express terms applies to tort actions, and which was enacted as part of a statute dealing primarily with tort liability, does not apply to actions in contract. Requested rulings 5 and 6 were therefore properly denied insofar as they pertain to Count 1. We find no error, either, in the denial of requested ruling 7 to the effect that there can be no liability in contract if none exists in tort, since, as the defendant concedes, the plaintiff here was in any event entitled to recover the amount of her expenses for reasonable medical care on both the contract and tort counts. This request could well have been denied as inapplicable to the undisputed facts in the case. Consequently, there was no error in the denial of the requested rulings insofar as they applied to Count 1, and the trial court's finding for the plaintiff on that count must stand.

In the remainder of this opinion, we consider the question of the applicability of §6D to the tort count (Count 2). It is clear from the report that if, as the defendant argues, §6D is applicable to a case of injury to a person not shown to be covered by personal injury protection benefits under St. 1970, c. 670, caused by the negligent operation of an MBTA bus, requested rulings 5 and 6 should have been given since none of the preconditions specified in that section for recovery for pain and suffering were present in this case. If, as the plaintiff insists, §6D is inapplicable to such a claim against the MBTA, the requested rulings were properly denied.

In our opinion, there was no error. The defendant is a political subdivision of the Commonwealth. (G.L. c. 161A, §1.) By the express terms of the statute creating it, the MBTA is liable for the acts and negligence of its servants and employees, and for personal injuries to passengers, and others to the same extent and in the same manner as though it were a street railway company. (G.L. c. 161A, §21). Thus, the defendant would be liable in tort for negligently causing injury to one of its passengers who was in the exercise of due care, and the damages recoverable by such person, apart from the effect of Section 6D, would include compensation for pain and suffering resulting from such injury.

§6D was enacted as part of St. 1970, c. 670

(commonly referred to as the "no-fault" motor vehicle insurance law, and hereinafter referred to as "Chapter 670", the major elements of which, so far as material to this case, may be briefly described in broad outline as follows: Owners of all motor vehicles registered in Massachusetts, with certain exceptions specified in G.L. c. 90, §1A, are required to provide as part of their compulsory motor vehicle liability insurance policies or liability bonds under G.L. c. 90, §34A, personal injury protection benefits which would, in most instances, provide compensation, irrespective of fault, within limits specified in the statute (not including compensation for pain and suffering), to persons injured in motor vehicle accidents within the Commonwealth. (Chapter 670, §§ 1-4.) While providing for prompt payment of such limited compensation to the injured person, Chapter 670 further provides that the "benefits due and payable under any motor vehicle liability policy or bond as a result of the provisions therein providing personal injury protection benefits . . . are granted in lieu of damages otherwise recoverable by the injured person . . . in tort as a result of an accident occurring within this commonwealth." (Chapter 670, §3). Under the terms of this section, the owner or operator of a motor vehicle to which such personal injury protection benefits apply would, with certain exceptions, be exempt from tort liability for

damages for injuries or death arising from the ownership or operation of such motor vehicle to the extent that the injured party is entitled to recover under the personal injury protection provisions of such insurance policy or bond. This limited exemption still permits an action of tort for personal injuries to be brought against certain owners or operators of vehicles to which such personal injury protection benefits do not apply, or even against an insured person, with respect to certain items of damage not recoverable within the limits provided by such personal injury protection benefits. (Chapter 670, §4. See *Pinnick* v. *Cleary,* Mass. Adv. Sh. (1971) 1129, 1135). §5 of Chapter 670 provided for the insertion, in G.L. c. 231, of §6D, which is set forth earlier in this opinion, limiting recovery for pain and suffering.

Under pre-existing provisions of G.L. c. 90, §1A,[1] the defendant, as a political subdivision

---

[1] The relevant portion of G.L. c. 90, § 1A reads as follows: "No motor vehicle or trailer, except one owned by a person, firm or corporation, for the operation of which security is required to be furnished under section six of chapter one hundred and fifty-nine A, or one owned by a person, firm or corporation subject to the supervision and control of the department of public utilities, as to which said department has issued a certificate as hereinafter described, or one owned by a street railway company under public control, or by the commonwealth or any political subdivision thereof, shall be registered under sections two to five, inclusive, unless the application therefor is accompanied by a certificate as defined in section thirty-four A."

of the Commonwealth, was excepted from the general requirement imposed by that section of furnishing compulsory motor vehicle liability insurance or a motor vehicle liability bond, as defined in §34A of said chapter 90. It is clear from the structure of Chapter 670 that the exemptions of c. 90, §1A are equally applicable to the requirements of personal injury protection insurance and related provisions of Chapter 670.

The defendant does not contend that it is exempt by reason of Chapter 670 from tort liability to the plaintiff, but it asserts that the limitations on recovery for pain and suffering as enacted in §5 of that statute are nevertheless applicable to bar her recovery for those items of damage which she sustained. The argument of the defendant is, in essence, that since §6D is complete within itself and contains no reference to personal injury protection benefits or related provisions of Chapter 670, that limiting section should be construed and applied without reference to such other provisions. The plaintiff contends that since §6D was enacted as part of a comprehensive statute, the entire statutory scheme and structure may be, and should be, considered in determining the scope and applicability of §6D.

"The guiding principle for the interpretation of a statute is that it must be construed, if reasonably possible, so as to effectuate the purpose of the framers, ascertained from its

several parts and the meaning fairly attributable to all of its words, considered in connection with the cause of its enactment, the subject to which it is applicable, the pre-existing state of the common and statutory law, the mischief to be remedied, and the object to be accomplished'', *Commonwealth* v. *S.S. Kresge Co.*, 267 Mass. 145, 148; *Commissioner of Corporations* v. *Chilton Club*, 318 Mass. 285, 289, 292; *Duggan* v. *Bay State Street Railway Co.*, 230 Mass. 370, 374, ''so that the various portions taken together shall constitute a harmonious and consistent legislative enactment'', *Price* v. *Railway Express Agency, Inc.*, 322 Mass. 476, 480; *Bolster* v. *Commissioner of Corporations*, 319 Mass. 81, 84-85.

As is obvious from the foregoing summary of the provisions of Chapter 670, its enactment represented a radical departure from the pre-existing law of this commonwealth concerning the rights and liabilities of persons involved in motor vehicle accidents resulting in personal injuries. While many proposals for change in the applicable law have been made over a period of years, it is probably fair to say that the inspiration for this type of no-fault legislation is to be found in the study and resulting proposals of Professors Keeton and O'Connell published in 1965. See Keeton and O'Connell, *Basic Protection for the Traffic Victim*. The underlying concept of their proposal was that the law should provide for

prompt payment of assured and relatively full compensation to the injured person for his out-of-pocket loss in exchange for the elimination of an uncertain tort claim in which he might be able, if successful, to recover a larger amount after costly and delayed litigation. See Keeton and O'Connell, *supra,* pages 6-10; Keeton and O'Connell, *"Alternative Paths Toward Non-Fault Automobile Insurance",* 71 Columbia Law Review 241, 248. They further recommended, as part of their program, that the tort liability exemption applicable in cases of "less severe" injury should apply against tort claims for pain and suffering as well as for economic loss, while in the "more severe" cases, the existing structure of the tort action should be preserved, thus allowing tort awards for pain and suffering as well as economic loss above the level of the tort exemption. Keeton and O'Connell, Basic Protection for the Traffic Victim, 361. This is obviously likewise the basic design and pattern followed by the Massachusetts legislature in enacting Chapter 670, as manifested by the entire statute and particularly by the declaration in section 4 of Chapter 670 (now G.L. c. 90, §34M) that benefits under the personal injury protection plan are "granted in lieu of damages otherwise recoverable by the injured person . . . in tort . . . ." (See *Pinnick* v. *Cleary,* Mass. Adv. Sh. (1971) 1129, 1149-50.) The criteria set forth in §5 of that statute

(now G.L. c. 231, §6D) obviously represent a guide-line adopted by the legislature to differentiate between motor tort cases deemed "more severe", in which there may be recovery for pain and suffering, and those deemed "less severe", in which the previously recognized rights of the injured party to recover in tort are extinguished in exchange for the personal injury protection benefits made available to him by the statute.

While the defendant has not presented any argument based on the "assigned claimsplan" provided for in Chapter 670, §4 (G.L. c. 90, §34N), we think it essential to determine whether the plaintiff would be entitled to personal injury protection benefits under that plan, with a resultant limitation on her right of recovery for pain and suffering. §34N requires insurers authorized to provide personal injury protection in this Commonwealth to maintain an assigned claims plan, whereby residents herein who suffer losses arising from motor vehicle accidents in the commonwealth, may obtain personal injury protection benefits through said plan in cases where no such benefits are otherwise available to such persons (all subject to stated exceptions not here material). Such benefits in any case would be paid by the insurer to which the particular claim is assigned, and that insurer would be subrogated, to the extent of its payments, to the rights of the person so paid, against the

person liable for such damages in tort who is not exempted from such tort liability under Chapter 670. The costs of operating the assigned claim plan, including administration expenses, benefits payments, and the like, to the extent not recovered by the paying insurers from uninsured persons against whom subrogation actions might be brought, would obviously be added to the loss experience of the insurers in subsequent premium rate-setting proceedings under G.L. c. 175, and could well result in material increases in premiums to be charged motor vehicle owners insured under this program. We have adverted to the broad classes of motor vehicle owners excluded by G.L. c. 90, §1A [2] from the requirement of carrying motor vehicle insurance. Considering the large number of injury-producing accidents in which motor vehicles of such excluded owners are involved (of which we may take judicial notice), we are of the opinion that §34N was not intended by the legislature to impose on the insurers providing such insurance in Massachusetts, under the assigned claims plan, the burden of assuming primary responsibility for compensating victims of injuries inflicted, whether negligently or otherwise, by motor vehicles owned by owners who are specifically excluded from the insurance program and who thus make no contribution to the pool of insurance funds available for payment of such

[2] See fn. 1, *supra*; St. 1970, c. 670, § 1.

benefits. Consequently, we hold that the plaintiff here was not eligible to receive personal injury protection benefits under the assigned claims plan provided for in G.L. c. 90, §34N.

Similarly, considering the entire scheme of Chapter 670, the philosophy underlying it, and the inter-relationship of its various parts, we believe that it may not properly be construed as giving the benefits of exemption from conventional tort liability, including recovery for pain and suffering, to the large classes of owners or operators of motor vehicles specifically excluded by G.L. c. 90, §1A from the requirement of providing personal injury protection coverage by insurance or bond, at least in an action by an injured person not shown to be otherwise entitled to personal injury protection benefits. More specifically, we cannot attribute to the Legislature the intent to preclude recovery for pain and suffering from the defendant in a permitted tort action by a passenger such as the plaintiff here who is not shown to have any personal injury protection coverage and who is deprived by specific statutory provisions of the opportunity to become entitled to personal injury protection benefits deriving through the defendant, and whose ultimate possible recovery for any of her losses is subject to the delay, expenses and uncertainties of litigation.

Subsequent to the enactment of Chapter 670 in Massachusetts, no-fault motor vehicle insur-

ance statutes have been enacted in several other states. In each of such statutes which contains a limitation on recovery for pain and suffering, such limitation is applicable only in an action against the owner or operator of a vehicle covered by personal injury protection insurance benefits. See: (Connecticut): Public Acts of 1972, No. 273, §5(a). (Florida): Laws of 1971, c. 71-252, §8(2). (New Jersey): Laws of 1972, c. 70, §8.

Our construction of §6D is not only consistent with the obvious design and pattern of Chapter 670, but it also avoids a serious question as to the constitutionality of that section which would arise if it were construed to deprive the plaintiff of her fundamental right to recover for her pain and suffering resulting from the negligence of the defendant, without providing her with a suitable and effective alternative for such right. Cf. concurring opinion of Chief Justice Tauro in *Pinnick* v. *Cleary, supra,* 1971 A.S. 1129, at pages 1160-61. See, also, *New York Central Railroad Co.* v. *White,* 243 U.S. 188, 201; Opinion of the Justices, 309 Mass. 571, 599. It is a generally accepted canon of construction that a statute "must be so interpreted as not to render it contrary to the terms of the Constitution and also to avoid grave doubt on that score." *Commonwealth* v. *S.S. Kresge Co.,* 267 Mass. 145, 148; *Kennedy* v. *Commissioner of Corporations,* 256 Mass.

426, 430; *Collector of Taxes* v. *National Shawmut Bank*, 259 Mass. 14, 20.

In our opinion, the Legislature has clearly manifested its intention that the existence and extent of the liability of the defendant MBTA for injuries caused by the negligent operation of its motor vehicles should remain subject to determination in a conventional tort action, unaffected by the provisions of Chapter 670. We note the incongruity which would result if we were to adopt the view of the defendant that §6D applies to a tort action based on the negligent operation of its fuel-powered buses, while that section is admittedly inapplicable to a similar tort action based on the negligent operation of its trackless trolleys (see G.L. c. 90, §1) which operate on the same public ways, equally free from the restraints of rails or tracks, and equally subject to the hazards of road conditions and traffic conditions. To permit a person injured in an accident involving a trackless trolley to recover for pain and suffering without meeting the criteria set forth in §6D, while denying the right of recovery for such items to a person injured in an accident involving a fuel powered bus under identical circumstances, without providing an alternative or substitute method of compensation to the latter person, would indeed represent an arbitrary and capricious distinction. We should not, unless required to do so, attribute

to the legislature an intent to produce such irrational distinctions. **Report dismissed.**

JAMES SOKOLOVE of Boston
for the Plaintiff

DAVID S. HOAR of Boston
for the Defendant