Grabau, J.
This is an action in contract in which the parties did not submit evidence to the trial justice but filed an agreed statement of facts. It is undisputed that the plaintiff purchased an insurance policy from the defendant which was effective from January 1, 1978 to January 1, 1979. Under the terms of this policy, the plaintiff insured two vehicles including a 1972 Chevrolet for compulsory insurance. On December 22, 1978, the husband of the insured plaintiff was killed instantaneously when the 1972 Chevrolet was involved in a single car collision. The plaintiff claimed $2,000 for wage loss incurred by her deceased husband as a result of the accident and other benefits pursuant to the provisions of Chapter 670, Acts of 1970, as amended. Liberty Mutual Insurance Company refused to pay the claim on the grounds that the statute contemplates lost wages while the injured person is disabled and actually incurs a loss of wages.
It is undisputed that the plaintiff had medical payments coverage at the time of her husband’s death in the amount of $5,000 per person. The plaintiff contends that the claim of $2,000 in lost wages should be paid from the personal injury protection portion of the policy and the funeral expenses of $ 1,956.50 from the medical payments portion of the policy. In denying the claim for lost wages, Liberty paid the funeral expenses out of the personal injury protection portion rather than the medical payments provisions of the policy.
After considering the “stipulation of facts” submitted by both parties, the trial judge made the following findings:
The court finds that the plaintiff, Mary B. Flanagan, is not entitled to recover no fault benefits for loss of wages of her husband who was killed instantly in a single car collision.[1]
This case is essentially one of first impression, the resolution of which will be based upon statutory interpretation. The issue before us is whether c. 670 of the Acts of 1970 as found in M. G. L. c. 90, § 34A, requires an insurer to pay lost wages where the decedent dies instantly as the result of an automobile collision.
The major difficulty in this case is trying to make sense of the definition of the words ‘ ‘Personal Injury Protection” (PIP) which is provided for in the statute. The definition as found in section 34A of Chapter 90 is a single sentence over a page in length.
If the extraneous clauses of the definition are edited out to find the core meaning of the statute, it reads as follows:
Personal injury protection provisions.. .provide payment of all reasonable ex *129 penses.. .for necessary medical, surgical, x-ray, and dental services.. .and funeral services and, in the case of persons employed,.. .of any amounts actually lost by reason of inability to work and earn wages or salary... and for payments in fact made to others.. .as a result of bodily injury, sickness or disease, including death at anytime resulting therefrom, caused by accident .. .without regard to negligence or gross negligence or fault of any kind, to the amount or limit of at least two thousand dollars on account of injury to or death of any one person.. .except that payments for loss of wages or salary or their equivalent.. .shall be limited to amounts actually lost by reason of the accident.. .(emphasis added)
The guiding principle for the interpretation of a statute is that it must be construed, if reasonably possible, so as to effectuate the purpose of the framers, ascertained from its several parts and the meaning fairly attributable to all of its words considered in connection with the cause of its enactment, the subject to which it is applicable, the pre-existing state of the common and statutory law, the mischief to be remedied, and the object to be accomplished, Commonwealth v. S.S. Kresge, 267 Mass. 145, 148 (1929), “so that the various portions taken together shall constitute a harmonious and consistent legislative enactment.” Price v. Railway Express Agency Inc., 322 Mass. 476, 480 (1948).
Chapter 90, section 34 could be construed in favor of the plaintiff since it provides for payments in the event of “death at anytime. ’ ’ The effect of this interpretation, however, would be to allow the estate of every person who died instantly as a result of a collision to automatically receive two thousand dollars for lost wages under the PIP provisions. We do not think that the legislature intended this result. Chapter 670 provides “the citizen the security of prompt and certain recovery to a fixed amount of the most salient elements of his out-of-pocket expenses...” Pinnick v. Cleary, 360 Mass. 1, 6 (1971). The deceased in this case died instantly and therefore did not have a period of disability which resulted in a wage loss.[2] To allow recovery for the plaintiff would be to create an automatic death benefit of two thousand dollars.
Our interpretation of section 34A is in harmony with section 34M of chapter 90 which provides the insurance company a right to investigate a wage loss claim. This statute provides:
If benefits for loss of wage or salary .. .are claimed, the party presenting such claim shall authorize the insurer to obtain details of all wage and salary payment .. .paid to him by an employer.. .and authorize the insurer to make any reasonably necessary investigation as to whether or not such loss may be reduced in whole or in part as a result of any program calling for the continuance of such wage, salary or earning during absence from work. The injured person shall submit to physical exam...
The above statute refers to the claimant’s absence from work and submission to a physical examination in order to determine amounts that the claimant is due. We infer from this language that the statute refers to a claimant who suffers from an injury or disability. We recognize that a PIP claimant could have a period of disability followed by death as a result of injuries received from an automobile collision which could entitle his estate to wage loss benefits under section 34A. In the instant case, the decedent had no *130 period of disability and therefore suffered no “actual” loss of wages.
Other jurisdictions have reached the same result, either by statutory enactments or decisional law. See 61 Del. Laws. c. 320; Perez v State Farm Mutual Automobile Ins. Co., 602 P. 2d 284 (Or. App. 1979), Benton v. State Farm Mutual Automobile Insurance Co., 295 So. 2d 344 (Fla. App. 1974), Griffin v. The Travelers Indemnity Co., 328 So. 2d 207 (Fla. App. 1976). Some states have allowed recovery expressly by statute (Georgia Code Ann., s. 56-3403b(b)4) or by construction of no-fault insurance statutes which are unlike our own. Heffner v. Allstate Insurance Company, 401 A.2d 1160, 1164-65 (Sup. Ct. 1979).
We conclude, for the above reasons, that the trial justice did not err in finding for the defendant.

Report Dismissed.

 Although no insurance policy was included in the trial justice’s Report, we will presume that it conformed to the mandates of section 34A of c. 90. MacBey v. Hartford Accident Co., 292 Mass. 105, 106-7 (1935).

 While no Massachusetts cases directly discuss this issue, Theodore v. Travelers Insurance Company, 57 Mass. App. Dec. 156 (1976), does allude to it. In Theodore, the plaintiff s daughter was killed in an automobile accident and sought damages under M. G. L. c. 90, § 34A for the diminution of the deceased’s earning power. The court concluded that the plaintiff was entitled to “recover for the deceased’s diminution of earning power from the period of here accident to her death.” 57 Mass. App. Dec. at 161. Although recognizing the plaintiffs right to recover for damages, the court decided that the plaintiff had failed to show that any time had elapsed between the accident and the deceased’s death. Thus, the plaintiff failed to meet his burden of proof as to the extent of the loss incurred.