Lowy, J.
INTRODUCTION
The Plaintiffs, E. Amanti & Sons (“Amanti”) and Westcott Construction Corporation (“Westcott”), bring this action to recover monies being held in an escrow account by the Triton Regional School District (“Triton") as payment for work performed on a construction contract to build the new Salisbury Elementary School (“Project”). Plaintiffs contend Triton violated G.L.c. 30, §39F(l)(f) when it set up an escrow account on behalf of Amanti and Westcott using Triton’s treasurer as the sole signatory on the account. Defendant tiled a cross motion for summary judgment alleging that no money is due to Westcott because of off-setting liquidated damages due to late completion of the Project, as well as unsatisfactory work. Plaintiffs seek a declaration that they are entitled to the funds in the escrow account. The matter is before the court on the parties’ cross motions for summary judgment. For the following reasons, the Plaintiffs’ joint motion for summary judgment is ALLOWED.
BACKGROUND
On February 26, 1998, Westcott was awarded the public construction contract for the Project. Subsequently, Westcott subcontracted with Amanti to perform the heating, ventilation, and air conditioning work. Under the contract, the Project was scheduled to be completed on June 2, 1999, but it was not substantially completed until January of 2000. As of September 13, 2000, Amanti had not been paid by Westcott for the work performed. As a result, Amanti filed a demand for direct payment for $240,256.17 with Triton under G.L.c. 30, §39F(l)(d). Westcott disputed the entire amount Amanti claimed it was due and responded to the demand for direct payment. On January 4, 2001, Triton established an escrow account for the benefit of Amanti and Westcott at the First & Ocean National Bank[2] pursuant to G.L.c. 30, *4 §39F(l)(f).[3] Rather than sending a request for signature cards to Amanti and Westcott to set up the statutorily required joint account, Triton named its Treasurer, James Burke, the sole signatory on the account. By May 24, 2001, Amanti and Westcott reached an agreement as to the disputed amount held in escrow. Amanti and Westcott informed Triton of the agreement and requested that the funds be released accordingly. To date, Triton has refused to release the funds in the account.
DISCUSSION
Summary judgment should be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
Here, there are no material facts in dispute. Rather, the solé issue before the court is interpreting the statutory language used in G.L.c. 30, §39F and determining the parties’ responsibilities therefrom. The general rule is that a statute must be interpreted according to the intent of the Legislature. Commonwealth v. S.S. Kresge Co., 267 Mass. 145, 148 (1929). The court’s interpretation of the statute is governed by construing all the words used by their plain meaning, considered in connection with the cause of the statute’s enactment. Id.
Contracting parties must comply with statutory requirements governing public construction. A. Bonfatti & Co., Inc. v. Rockport, 12 Mass.App.Ct. 797, 800 (1981) (citations omitted). Pursuant to G.L.c. 30, §39F(1)(d), a subcontractor may demand direct payment from the awarding authority of the balance due on a subcontract if the general contractor has not paid the balance within seventy days of the completion of the subcontract work. G.L.c. 30, §39F(1)(d). Where the demand is proper, the awarding authority is obligated to pay the subcontractor. See Pioneer Steel Erectors, Inc. v. Commonwealth, 344 Mass. 195, 198 (1962).[4] Triton does not contend that Amanti’s demand for payment is improper.
When the amount owed to the subcontractor is disputed by the general contractor, as here, the disputed amount must be deposited in an interest-bearing joint account in the names of both the general contractor and the subcontractor. G.L.c. 30, §39F(l)(f). Westcott disputed the entire amount owed to Amanti. As a result, Triton deposited the total amount of the direct payment not into a joint account, but into an escrow account. When Triton established this account naming its Treasurer, James Burke, as the sole signatory, Triton failed to comply with the procedure as mandated by the statute. See Old Colony Reg’l Vocational Technical High School Dist. v. New England Constructors, Inc., 443 F.Sup. 822, 824 (D.Mass 1978) (holding disputed direct demand payments deposited by awarding authority into accounts in its attorney’s name were insufficient and thus liable to the subcontractors for interest on their claims).
Although the direct payment statute authorizes retention of funds by the awarding authority for the estimated cost of completing work not yet performed on the subcontract, and unsatisfactory work on the subcontract, Triton did not retain any such funds. See G.L.c. 30, §39F(1)(e)(i). Although Triton already established the account for the benefit of Amanti and Westcott, Triton now contends that the statute requires amounts subject to direct payment claims be deducted from amounts payable to the general contractor; and because there was no money due to Westcott, no money is owed to Amanti. See G.L.c. 30, §39F(1)(g).[5] Triton’s interpretation contravenes the plain meaning of the statute. Old Colony Reg’l Vocational Technical High School Dist., 443 F. Sup. at 824. Such an interpretation would require subcontractors to wait until all claims between the awarding authority and the general contractor were settled prior to getting paid.
The purpose of the direct payment statute is to ensure prompt payment to subcontractors on public works projects. The statute requires the awarding authority to “forthwith” deposit the disputed amount into a joint bank account. G.L.c. 30, §39F(1)(f). Furthermore, the statute requires, upon an agreement between the general contractor and the subcontractor, that the bank pay the amounts accordingly. Id. In addition, the statute gives subcontractors priority to disputed direct payment money over the creditors of the general contractor and mandates the funds in the account be “earmarked” for such direct payments. G.L.c. 30, §39F(1)(h). The legislative language suggests that an account established pursuant to the direct payment statute is inviolable as to any entity other than the subcontractor until the subcontractor receives its payment.
There is no language in the statute that could be interpreted to allow putting the awarding authority’s claim against the general contractor in a better position than the subcontractor’s right to payment. The statute does not allow the awarding authority to withdraw funds from the already-established account. The only time §39F contemplates the awarding authority’s retention of funds is prior to the direct payment and thus prior to the establishment of the joint account.
Triton contends, however, that since the account was established with an improper signatory, the account is invalid and therefore, it should have access *5 to the funds to satisfy its claims against Westcott. Certainly if Triton complied with the proper formalities in setting up a joint account in the names of both Amanti and Westcott as prescribed by the statute, Triton would have no authority to prevent the bank from dispersing the funds. Cf. Superior Glass Co., Inc. v. First Bristol County Nat. Bank, 380 Mass. 829, 833 (1980) (imposing constructive trust for benefit of subcontractors upon building owner because owner had duty not to give itself preference as a creditor). Triton is precluded from benefitting from its own mistake. Accordingly, once an account is established under G.L.c. 30, §39F(1)(f) for the purpose of satisfying a direct payment demand by a subcontractor, an awarding authority no longer has control over or access to the funds.[6]
ORDER
For the above reasons, it is hereby ORDERED that Plaintiffs’ joint motion for summary judgment be ALLOWED. Triton is further ordered to authorize First & Ocean National Bank to release the funds held in the joint escrow account, number 5033294, including accrued interest, and direct the bank to pay Amanti and Westcott as provided in their agreement. The court further orders that Defendant’s cross motion for summary judgment be DENIED.

 Triton disputes this fact and argues that the account was not an escrow account for Amanti and Westcott since no monies were due to Westcott when the account was established and Triton’s name remains on the account. This argument is unavailing because the bank records themselves indicate the account was established as an escrow account for Amanti and Westcott. Further, whether or not any money was due to Westcott is irrelevant, as it was Amanti’s demand for direct payment that led to the establishment of the account. Triton’s reliance on G.L.c. 30, §39K here is misplaced. G.L.c. 30, §39K indicates that upon substantial completion, and when the awarding authority takes possession for occupancy, an awarding authority is permitted to withhold amounts from the final payment only as to the general contractor, not from direct demands by subcontractors. The amount of the funds withheld from the final payment to the general contractor is to be based upon the fair value of claims against the general contractor and the cost of completing unsatisfactory work. The court in this action need not address separate claims Triton may have against Westcott for breach of contract. See A. Bonfatti & Co., Inc. v. Rockport, 12 Mass.App.Ct. 797, 801 (1981) (interpretation of §39K didnot bar the awarding authority from seeking other remedies under contract law).

 G.L.c. 30, §39F(1)(f) provides that, ”[t]he awarding authority shall forthwith deposit the amount deducted from a direct payment as provided in part (iii) of subparagraph (e) in an interest-bearing joint account in the names of the general contractor and the subcontractor in a bank in Massachusetts selected by the awarding authority or agreed upon by the general contractor and the subcontractor and shall notify the general contractor and the subcontractor of the date of the deposit and the bank receiving the deposit. The bank shall pay the amount in the account, including accrued interest, as provided in an agreement between the general contractor and the subcontractor or as determined by decree of a court of competent jurisdiction.”

 See also P.J. Gear & Son, Inc. v. Commonwealth, Civil No. 98-00242 (Super. Ct. Jan. 29, 2001).

 G.L.c. 30, §39F(1)(g) provides that, ”[a]ll direct payments and all deductions from demands for direct payments deposited in an interest-bearing account or accounts in a bank pursuant to subparagraph (f) shall be made out of amounts payable to the general contractor at the time of receipt of a demand for direct payment from a subcontractor and out of amounts which later become payable to the general contractor and in the order of receipt of such demands from subcontractors. All direct payments shall discharge the obligation of the awarding authority to the general contractor to the extent of such payment.”

 If the awarding authority may reach back and access the account once it is established, the purpose of the statute to ensure prompt payment to subcontractors would be frustrated, thus contravening the plain meaning of the statute.